(No. 7180.   May 16, 1945.)

## STATE OF IDAHO, Plaintiff-Appellant, v. ADA COUNTY DAIRYMEN'S ASSOCIATION, Defendant-Respondent.

[159 P. (2d) 219.]
Rehearing denied June 11, 1945.

Frank Langley, Attorney General, and Thos. Y. Gwilliam, Assistant Attorney General, attorneys for appellant.

Oscar W. Worthwine for respondent.

HOLDEN, J.—This action was commenced January 28, 1943, to recover unemployment excise taxes and penalties. Numerous causes of action were comingled in one count of the complaint. The Association moved to compel appellant to separately state these causes of action. Upon the granting of this motion appellant filed an amended complaint setting forth twenty separate independent causes of action. The Association demurred to each cause of action upon the ground it did not state facts sufficient to constitute a cause of action. Respondent Association also specially demurred to these causes of action respectively upon numerous grounds. And the Association demurred to the first eight causes of action upon the ground they were barred by the statute of limitations, which the trial court sustained. The trial court likewise sustained the demurrers, respectively, to the remaining twelve causes of action upon the ground that they, respectively, did not state facts sufficient to constitute a cause of action, and upon the special ground, respectively, it could not be ascertained "how, or by what means or act, the defendant (respondent Association) was or became a covered employer, within the meaning of the Unemployment Compensation Act." The trial court having held none of the causes of action stated facts sufficient to constitute a cause of action and, further, that the first eight were barred by the statute of limitations, refused to pass on the question as to whether the Unemployment Compensation Law (1935 S. L., Third Ex. Sess., Chap. 12, p. 20), as amended, was, or was not, unconstitutional, from which ruling the Association did not appeal.

While appellant does not enumerate the errors relied upon for a reversal of the judgment appealed from, as required by Rule 42, it argues it "believes that the court below erred in sustaining the demurrer to appellant's amended complaint by holding that the complaint failed to state a cause of action, and the court erred in sustaining the respondent's demurrer holding that the cause of action for taxes, interest, and penalties, accruing more than three

years prior to January 28, 1943, was barred by provisions of Section 5-218, Subd. (1), I.C.A."

If the first eight causes of action were barred by the statute of limitations, as the trial court held, it will be unnecessary to determine whether those causes of action, respectively, did, or did not, state a cause of action.

The Unemployment Compensation Law was enacted by the Twenty-third Session of the Legislature, Third Extraordinary Session 1936 (1935 S.L., p. 20), approved August 6, effective September 1, 1936. The legislature levied a tax upon every employer of one or more individuals during the calendar year of 1936 from September 1, 1936 to December 31, 1936, "an amount equivalent to nine-tenths of one per centum of the wages payable by him with respect to employment during the calendar year of 1936." A tax was also levied for the calendar year 1937, due in quarterly installments, subsequent to December 31, 1936 (Chap. 12, Sec. 7, pp. 27, 28, S. L. 1935, Third Ex. Sess.; re-enacted 1937 S. L., p. 304).

The first eight causes of action cover a period from and including the first quarter of 1938 to and including the fourth quarter of 1939.

Section 5-201, I.C.A., provides:

"Civil actions can only be commenced within the periods prescribed in this chapter (Chap. 2, Title 5, I.C.A.) after the cause of action shall have accrued * * *"

Section 5-218, I.C.A., provides: .

"Within three years:

"1. An action upon a liability created by statute, other than a penalty or forfeiture.

"2. * * *

"3. * * *

"4. * * *"

Section 5-228, I.C.A., provides:

"Action, when commenced.—An action is commenced within the meaning of the chapter when the complaint is filed."

The taxes and penalties sought to be recovered in this action arise out of, are created by, and provided for by the Unemployment Compensation Law and, therefore, constitute a statutory obligation or liability. And as to that, appellant concedes "that this is an action brought by the State of Idaho based upon a statute which provides that the State of Idaho shall collect taxes from certain described employers, that the tax is a statutory obligation." In other words, appellant concedes this action is brought to recover upon a liability created by statute.

Furthermore, on that question, *Dietrich v. Copeland Lumber Co.*, 28 Ida. 312, 154 P. 626, interpreted Sec. 4054, sec. 1, R.C. (now Sec. 5-218, supra) for the purpose of determining whether certain causes of action therein involved were, or were not, based upon a statutory obligation or liability, and, therefore, barred by that section, in which case this court held (quoting with approval 4 Words and Phrases, 2d Series, p. 686) that " 'A "statutory liability" is one that depends for its existence on the enactment of the statute and not on the contract of the parties.' "

And in *Lemhi Co. v. Boise Livestock Loan Co.*, 47 Ida. 712, 278 P. 214, an action brought by that county to recover personal property taxes, this court held the action to recover the taxes was one based upon a liability created by statute, and more than three years having elapsed after the cause of action accrued, was barred by the statute (C.S., sec. 6611, now sec. 5-218, I.C.A., supra).

A period of more than three years having elapsed from and after the quarterly due date (Chap. 12, Sec. 7, Twenty-third Session of the Legislature, Third Ex. Sess., p. 27; S. L. 1937, p. 304; S. L. 1939, p. 399), before this action was commenced on January 28, 1943, the first eight causes of action set forth in the amended complaint were, and each of them is, barred by the provisions of Sec. 5-218, supra.

We come now to a consideration of the question as to whether the remaining twelve causes of action, respectively, state facts sufficient to constitute a cause of action. The causes of action are identical except as to the amount of taxes, interest and penalties. Being identical, we will discuss the ninth cause of action, the first in the remaining group. Appellant reaffirmed and realleged paragraphs

numbered 1, 2, 3, 4 and 5 of its first cause of action, and made those paragraphs parts of that, the ninth cause of action, as fully as though set out in full therein.

Appellant alleged that respondent Association was, and is, an Idaho corporation; that H. F. Garrett was an authorized representative of the Industrial Accident Board; that that Board was charged with the administration of the Unemployment Compensation Law; that on the 9th day of May, 1941, Garrett made a determination concerning certain truckers hauling milk for the Association, and "that said determination was as follows:

"5141-03793
"May 9, 1941

"Mr. William B. Davidson
"Attorney at Law
"Meridian, Idaho

"Dear Mr. Davidson:

"Since my letter of April 14, 1941, was written relative to the status of employees of the trucking contractors hauling milk for the patrons of Ada County Dairymen's Association at Meridian, several of the truckers have called at this office for the purpose of obtaining a determination upon their status under the Unemployment Compensation Law with the intention of filing the necessary reports and paying contribution on their pay rolls if they were subject to the provisions of the law as employers.

"It appears that these so-called contractors do not have written contracts and that the majority of them have purchased their trucks from individuals who formerly were engaged in hauling milk to the creamery and that, in each case before the deal could be completed, it was necessary to obtain approval of the Board of Directors of the creamery before the purchaser could take over the route. The routes are numbered and each carrier is required to confine his activities to his assigned route, although there is no written requirement in this regard. It further appears that a route carrier does not have full authority over his helpers and that, in several instances, the manager of the creamery has directed certain milk haulers to discharge helpers. We are also informed that the creamery manager will not permit a milk hauler to engage in some other busi-

ness and hire some one to operate his truck. We also find that in the past there have been several independent haulers who did not observe route designations but who entered into agreements with the individual farmers for the hauling of their milk at a lower rate than the regular creamery haulers; that in those cases the creamery did not make a deduction from the farmer's check for the cost of hauling, making it necessary for the trucker to make his own collection direct from the farmer.

"This situation seems to clearly establish the difference between an independent hauler and an employee, although the other factors that we have mentioned all tend to establish the individuals who are hauling on a designated route to be employees rather than independent contractors. In view of these conditions, it is necessary that we hold that the services rendered by all of the so-called trucking contractors to be employment under the Unemployment Compensation Law and that the employment of their helpers was merely in the capacity as agent for the Ada County Dairymen's Association.

"In line with this determination, it will be necessary for the Association to file complete reports and pay the contribution on all such employment occurring subsequent to the passage of the Unemployment Compensation Law.

"Very truly yours,

"UNEMPLOYMENT COMPENSATION DIVISION

"By ................................................................................................................

"hfg vt                    H. F. Garrett, Chief Accountant"

"cc—Ada County Dairy-
        men's Association

Appellant further alleged that a copy of the foregoing determination (referring to the above quoted letter) was enclosed in an envelope addressed to the said William B. Davidson with the return address of the Unemployment Compensation Division thereon and was mailed in the regular course of mail on May 9, 1941; "that plaintiff (appellant here) alleges that said William B. Davidson is President of the defendant (respondent) corporation"; that respondent "wholly neglected and still neglects and refuses to file an appeal to the Industrial Accident Board pursuant to Sec. 7-5 of Chap. 182 of the 1941 Session Laws and that time for said appeal has expired"; and

"That the Unemployment Compensation Division of the Industrial Accident Board has audited the books of the Ada County Dairymen's Association to determine the amount of contributions due the State of Idaho pursuant to said Unemployment Compensation Law, and there is due and owing the State of Idaho for contributions for the first quarter of 1940 the amount of $317.71; interest for failure to pay taxes on the date that the same became due in the amount of $68.31; and penalty for failure to pay taxes on the date that the same became due in the amount of $79.43."

It will be noted that what appellant alleged on the question now under consideration, in substance, was, that on the 9th day of May, 1941, Garrett had made a determination or decision concerning certain services performed by truckers engaged in hauling milk for respondent Association and that such determination or decision was made in and by the above quoted letter to William B. Davidson, apparently attorney for such truckers.

Turning now to the letter for the purpose of ascertaining, if possible, just what the Garrett determination or decision was, we find that "several of the truckers have called at this (apparently Garrett's) office for the purpose of obtaining a determination upon their status under the Unemployment Compensation Law with the intention of filing the necessary reports and paying contribution on their pay rolls if they were subject to the provisions of the law as employers," from which it appears the truckers had called at Garrett's office for the purpose of obtaining a determination as to whether they were, or were not, covered employers and, therefore, required to file "necessary reports" and pay "contribution on their pay rolls."

It further appears from the above quoted letter that the truckers did not have written contracts; that a majority had purchased their trucks; that the routes were numbered and each carrier or trucker was required to confine his activities to his assigned route; that "It further appears (to Garrett) that a route carrier does not have full authority over his helpers and that, in several instances, the manager of the creamery has directed certain milk haulers to discharge helpers. We (Garrett) are also informed that the creamery manager will not permit a milk hauler to engage in some other business and hire some one to operate

his truck. We also find that in the past there have been several independent haulers who did not observe route designations but who entered into agreements with the individual farmers for the hauling of their milk at a lower rate than the regular creamery haulers; that in those cases the creamery did not make a deduction from the farmer's check for the cost of hauling, making it necessary for the trucker to make his own collection direct from the farmer."

Then Garrett in his letter to attorney Davidson apprises him that the situation he described "seems to clearly establish the difference between an independent hauler and an employee, although the other factors that we have mentioned all tend to establish the individuals who are hauling on a designated route to be employees rather than independent contractors," and that "In view of these conditions, it is necessary that we (Garrett) hold that the services rendered by all of the so-called trucking contractors to be employment under the Unemployment Compensation Law and that the employment of their helpers was merely in the capacity as agent for the Ada County Dairymen's Association," and, further, that "In line with this determination, it will be necessary for the Association (instead of the truckers) to file complete reports and pay the contribution on all such employment occurring subsequent to the passage of the Unemployment Compensation Law." From all of which it appears to us the truckers had submitted to Garrett for his determination and decision the question as to whether they were employers, that is to say, independent contractors, and hence, were required to file "necessary reports" as such and pay "contribution on their pay rolls," or employees of respondent Association and, therefore, not required to file reports or pay contributions, and that Garrett decided the controversy by holding they were not independent contractors, but employees of the Association.

Furthermore, the Garrett letter to Davidson, attorney for the truckers, appears to have been written for the purpose of informing Davidson of what he, Garrett, had learned and been informed in the course of his investigation of the question as to whether the truckers would, or would not, be required to file "necessary reports" and pay "contributions on their pay rolls," and of his (Garrett's) decision of that question.

That brings us to a consideration of the question as to whether it is, or is not, necessary in order to state a cause of action, to plead "how, or by what means or act, the defendant (respondent Association) was or became a covered employer within the meaning of the Unemployment Compensation Act."

The Industrial Accident Board was and is charged with the administration of the Unemployment Compensation Law. It is made the duty of the Board to administer the Act. It is given "power and authority to adopt, amend or rescind such rules and regulations, to employ such persons, require such reports, make such investigations and to take such other action as it deems necessary or suitable to that end." (Chap. 12, Secs. 10, 11, Twenty-third Session of the Legislature, Third Ex. Sess., 1935 Sess. Laws, p. 37; re-enacted 1939 S. L., p. 570; re-enacted 1941 S. L., p. 420). The Board could not administer the law without investigating and determining what employers were within the provisions of the statute and, therefore, required to pay the tax. And for the purpose of performing that duty the Board is vested with full power to make rules, require reports and take such action as it deems necessary. Nowhere is the district court charged with any duty connected with the administration of the law or the determination of the question, in the first instance, as to what employers come within its provisions and thus are required to pay the tax. It is true where an employer fails to make the required report or pay the tax the Board may make an estimate and prosecute an action in the district court to collect. In that respect our attention is directed to Sec. 14, subdivisions (a), (c), (e) and (f) (1939 S. L., pp. 573-4). We quote those subdivisions:

[Sec. 14] "(a) * * * The Board shall receive and collect contributions, interest and penalties in accordance with the provisions of this Act, and shall deliver the same promptly upon receipt thereof to the State Treasurer for deposit in the Unemployment Compensation Fund."

"(c) * * * In the event that a person liable for payment of contributions shall fail to make a report thereof on or before the day that such contributions fall due, the Board shall have authority to estimate and assess the amount

thereof according to the best information obtainable. Such assessment shall be subject to review and modification at any time prior to payment. Any court in which an action shall be commenced to enforce payment of contributions assessed as herein provided shall have jurisdiction to review and affirm, modify or reverse such assessment. The court shall make and enter judgment for the amount found due plus interest and penalty as provided in section 7-3 of this Act."

"(e) The Board may commence and maintain any civil action in court necessary or proper to enforce the provisions of this Act. All such actions shall be commenced and maintained in the name of the State. All costs and expenses necessarily incurred in any such action shall be paid out of the Unemployment Compensation Administration Fund."

"(f) In the collection of contributions, interest and penalties, the Board shall have all the rights and remedies provided by the laws of the State of Idaho for collection of a debt arising upon contract."

It is clear that what the district court is given power to "review and affirm, modify or reverse," in a case brought to collect the tax, is, for instance: whether a defendant employer comes within the provisions of the statute and, therefore, required to pay the unemployment excise tax; the number of employes on which the tax must be paid; the wages of such employees and kindred matters. Neither the Board nor the district court is given power to *assess* in the sense of levying an unemployment excise tax because the legislature not only levied but fixed the amount of the tax, commencing with Chap. 12, supra (Sec. 7, Twenty-third Session of the Legislature, Third Ex. Sess., 1935 Sess. Laws, p. 27; 1937 S. L., p. 304; 1939 S. L., Sec. 7-2, p. 398; 1941 S. L., Sec. 7-2, p. 406). The legislature could not have intended, by making provision for a review of the matters we have just pointed out, to make the district court a fact finder or to vest it with power or any duty to administer the law. At any rate, the legislature expressly laid that duty upon the Industrial Accident Board which, to my mind, is a rather convincing expression of its intent in that respect.

It follows from what has been said the amended complaint does not state facts sufficient to constitute a

cause of action. In order to state a cause of action, the complaint must contain sufficient allegation of facts to show, among other things, that the Association is a covered employer within the meaning of the Unemployment Compensation Law and, therefore, required to pay the unemployment excise tax.

Judgment affirmed.

Ailshie, C.J., and Budge and Givens, JJ., concur.