# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 50294

DANIEL PHILLIP GENHO, an
individual, d/b/a GENHO
CONSTRUCTION,

    Plaintiff-Respondent,

v.

RIVERDALE HOT SPRINGS, LLC, an
Idaho Limited Liability Company, d/b/a
RIVERDALE RESORT; RIVERDALE
RESORT AND SPA, LLC, an Idaho
Limited Liability Company, d/b/a
RIVERDALE RESORT,

    Defendants-Appellants,

TIPPETTS, INC., an Idaho Corporation
and NORTHERN TITLE COMPANY,
INC., a Utah Corporation,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2024 Term

Filed: December 10, 2024

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Franklin County. Mitchell W. Brown, District Judge.

The decision of the district court is <u>affirmed</u> in part and <u>reversed</u> in part, with the judgment for attorney fees <u>vacated</u> and <u>remanded</u>.

Silvey Law Office LTD, Boise, attorneys for Appellants. Greg Silvey argued.

May, Rammell & Wells, Pocatello, attorneys for Respondent. Peter M. Wells argued.

---

BEVAN, Chief Justice.

This appeal asks the Court to determine whether the Idaho Contractor Registration Act (ICRA or "the Act") permits equitable remedies for contractors who become registered under the Act midway through a construction project. *See* I.C. §§ 54-5201 to -5219. The case arises from a

1

dispute between Daniel Genho and Riverdale Hot Springs, LLC ("Riverdale" or "Resort") over remodel work Genho performed at the Resort. Towards the end of the construction project, the parties had a payment dispute. Riverdale refused to pay Genho and prevented him from retrieving his tools and the materials he had purchased from Riverdale's property. Genho filed a Mechanic's and Materialmen's Lien pursuant to Idaho Code section 45-507 against the real property of Riverdale Resort. Genho sued for breach of contract, unjust enrichment, quantum meruit, conversion, and to foreclose on the mechanic's lien. The case proceeded to jury trial. During trial, the district court granted Riverdale's motion for directed verdict on the breach of contract claim but denied it on Genho's other claims. Riverdale argues that the district court erred by granting a directed verdict only on Genho's breach of contract claim, arguing that Genho's claims for unjust enrichment, quantum meruit, conversion, and to foreclose the lien are also barred under ICRA because Genho was not a registered Idaho contractor at all times while acting as a contractor for Riverdale. Accordingly, Riverdale asks this Court to vacate the district court's judgment on all counts entered in favor of Genho. We affirm in part and reverse in part.

## I. BACKGROUND

### A. Factual Background

Riverdale Resort is a motel and camping destination located north of Preston, Idaho, along the Bear River. Together with the motel, the Resort includes several RV sites, cabins, a condominium ("condo"), and two water slides, which include locker rooms.

Riverdale Resort consists of two companies: (1) Riverdale Hot Springs, LLC, which owns the real property associated with the Resort, and (2) Riverdale Resort and Spa, LLC, which runs and operates the business located at the Resort. Jonathan Taft Steele ("Steele") is the sole member of both LLCs (limited liability companies). Steele's sister, Rachel Steele-Babneau ("Steele-Babneau") manages the Resort and its workers.

At some point in 2017, the women's locker room flooded from ruptured pipes and fire damage. Steele decided that along with repairing that damage, he would remodel parts of the Resort, which included updating the lobby, motel rooms, and the condo.

According to Riverdale, Steele met Genho while Genho was living in Steele's parents' basement. According to Genho, the two met at Steele's home, after which Steele invited Genho to the Resort to observe the locker room damage. Genho testified that Steele walked him through the

2

property asking if Genho could repair various issues and asked for Genho's advice on remodeling the lobby and motel rooms and building a commercial kitchen.

After the walkthrough, Genho emailed Steele Google SketchUp drawings with his ideas for remodeling the kitchen, lobby, and condo. Genho testified that in response to Steele's request, he included a quote of $89,375 for materials in one of these emails. According to Genho, Steele did not immediately respond to these emails. Instead, Genho claimed that Steele-Babneau asked Genho to start on the construction projects. Genho immediately began demolition work on those projects. Genho testified that Steele-Babneau was his primary contact at the Resort during the demolition phase.

Steele described the agreement between him and Genho as a time and materials contract:

> Our agreement was that I would pay him [$]27.40 an hour, and I would cover any of the costs, materials, other workers, anything else that was necessary. I would cover the costs at cost, and he . . . would keep track of his hours, and I would pay him [$]27.50 an hour. And that was it.

Steele claimed that the initial scope of the remodel portion of the project included updating the lobby, motel rooms, and the condo, but that the duration and other work was "open-ended" because there were several projects that needed to be done and that "we would figure those things out as we went along." Genho acknowledged that he agreed to do the preliminary demolition work for $27.50 per hour and that the original timeline for the work was loose, with Steele telling him "when you have time, let's just do some things."

Genho did construction work at the Resort between January and March 2018. The work included demolishing the lobby and installing a new ceiling, performing demolition work in all eight motel rooms and the condo, and installing new flooring and remodeling the motel room bathrooms.

Genho testified that in February 2018 Riverdale accelerated the project timeline to try to open for the summer season. Genho testified that when Riverdale moved up the completion date, he told Steele-Babneau that he could not meet the earlier timeline on the existing time and materials contract. To meet the new timeline for the remodel project, Genho testified that he spoke with Steele-Babneau in person (Steele was not present or part of this discussion) and Steele-Babneau suggested that he hire a crew, register as a contractor, and submit a bid to Riverdale. If Riverdale accepted the bid, Genho would complete the remodel project in time for the summer season, and if Riverdale declined the bid, it was "free to go find someone else." Genho began the process of applying for an Idaho contractor's registration on or about February 28, 2018, and received it on March 19, 2018.

3

Genho stated that he spoke with Steele-Babneau by phone on March 14, 2018, and then texted her the quote for the remodel project. The quote was based on the work Steele-Babneau told Genho that Steele wanted done. Genho claimed that the remodel project quote was a fixed-price contract (where labor was included in the quote) and that the bid was contingent on Genho obtaining his contractor's registration.

Genho testified that even though Steele-Babneau said the bid looked good, Steele never signed the bid:

> [Steele-Babneau] . . . said the bid looks good. I'll have [Steele] sign it.
> And then they never signed it and brought it to me.
> And I said: Hey, you guys never signed that.
> And they said: Don't worry. We'll pay it. We're good.

The day after this conversation, on March 15, 2018, Steele-Babneau gave him a check to buy materials to start the project the following week. Genho bought the materials the same day and immediately began work on the remodel project. Genho received his contractor's registration four days later, on March 19, 2018.

Genho testified that throughout the project, Riverdale added materials and work to the project that were not part of the original quote or bid. Genho accommodated the change orders, submitted new invoices for payment on the change orders, and that Riverdale paid him for the change orders without questioning him about his hours or the cost of materials.

As the remodel project was ending, the parties had a dispute over the change orders, including the nature of their agreement, and law enforcement informed Genho "not to come back to the Riverdale property." Genho was not allowed to retrieve his tools from the property and he was not paid for his last invoice for work on the remodel project. Genho placed a mechanic's lien on the property to secure payment.

### B. Procedural Background

Genho sued Riverdale, alleging four claims: (1) breach of contract for $76,750; (2) unjust enrichment/quantum meruit[1] for $76,750; (3) conversion for $36,750; and (4) foreclosure of the mechanic's lien that he placed on Riverdale's real estate, also seeking $76,750.

---

[1] Unjust enrichment and quantum meruit are two measures for equitable relief. *See Turcott v. Estate of Bates*, 165 Idaho 183, 189–90, 443 P.3d 197, 203–204 (2019) (explaining that unjust enrichment and quantum meruit are related but provide distinct measures of recovery). Genho's complaint combined both in this manner.

Riverdale filed an Answer in which it argued that Genho's Complaint should be dismissed because Genho had violated ICRA by not being a registered contractor at all times during the construction work. Riverdale asserted that the penalties clause of the Act, Idaho Code section 54-5217, prohibited unregistered contractors from bringing lawsuits against the party who hired them.

After filing its Answer, Riverdale moved for summary judgment on all four of Genho's claims, arguing that there was no genuine dispute that Genho began working and was paid by Riverdale as a contractor before registering as a contractor in Idaho. Genho filed an Objection arguing that he had two separate agreements with Riverdale, and his suit was based on breach of the second contract, which he argued began after he was a registered Idaho contractor. The district court denied Riverdale's motion on all four claims, finding that there was a material question of fact regarding whether there were one or two agreements between Genho and Riverdale.

The case went to a jury trial on August 29, 2022. After Genho finished presenting his case-in-chief, but before the jury issued a verdict, Riverdale moved for a directed verdict on all four of Genho's claims. Riverdale again argued that ICRA barred Genho from seeking any relief because he was not a registered contractor at all times during the project.

The district court found that Genho had sufficiently demonstrated that there were two separate transactions between him and Riverdale. The court found that Genho performed all the work in the first transaction before he became a registered contractor.

On the second transaction, the district court found that Genho did not begin any "construction," as defined by ICRA, on that transaction until after he received his contractor's registration. Even so, the court recognized that Genho had partially performed on the second contract by submitting an invoice, being paid on that invoice, and buying materials for that invoice, before he became registered.

Based on those facts and its interpretation of ICRA, the district court: (1) granted directed verdict on the breach of contract claim; (2) denied directed verdict on the quantum meruit/unjust enrichment claim; (3) denied directed verdict on the conversion claim; and (4) *initially* granted directed verdict on the lien claim.

As to the breach of contract claim, the district court found that even though Genho had not performed any "construction" as defined by the Act on the second transaction before becoming registered, he had partially performed on that contract by invoicing, receiving payment, and buying materials on that contract while unregistered, which violated ICRA. The district court's directed

5

verdict on the breach of contract claim is not at issue in this appeal.

The district court denied Riverdale's motion for directed verdict for unjust enrichment/quantum meruit and conversion claims because the court found that Genho was entitled to equitable relief for work performed during the second transaction, even though the second contract was illegal and unenforceable under ICRA. Relying on and quoting directly from *AED, Inc. v. KDC Investments, LLC*, 155 Idaho 159, 169, 307 P.3d 176, 186 (2013), the district court found Genho was entitled to equitable relief because the work he did during the second transaction was severable from the unregistered work he did during the first transaction.

The district court initially granted Riverdale's motion for directed verdict on the lien claim. The court reasoned that because Genho's second transaction violated ICRA, the lien claim was barred by the Act's lien waiver provision in Idaho Code section 54-5208.

Later in the hearing on the motion for directed verdict, Genho's attorney asked the court to reconsider its decision on the lien claim under this Court's holding in *ParkWest Homes LLC v. Barnson*, 149 Idaho 603, 238 P.3d 203 (2010). After hearing arguments from both parties and reviewing *ParkWest* and *AED*, the district court reversed itself and denied the motion for a directed verdict on the lien claim. The district court reasoned that both *ParkWest* and *AED* allow a contractor to foreclose a lien for work and supplies, provided the contractor was registered—even if the contractor started work while unregistered—but only if the registered and unregistered work were severable. Thus, the district court's final ruling granted Riverdale a directed verdict on the breach of contract claim, but denied it on all other claims.

With the breach of contract claim decided, the remaining claims proceeded to the jury[2], which found for Genho on all remaining claims, rendering a verdict for $295,568. The parties stipulated to reduce the judgment to $68,681 to resolve issues of double recovery and offsets, and the district court entered judgment accordingly.

The district court found that Genho was the prevailing party under Idaho Rule of Civil Procedure 54 and awarded him costs. The court also awarded Genho attorney fees under Idaho Code section 12-120(3) and Idaho Code section 45-513. Riverdale timely appealed.

---

[2] The remaining claims, except for conversion, were equitable. Such claims are properly decided by courts, not juries. *See Worthington v. Crazy Thunder*, 173 Idaho 262, ___, 541 P.3d 694, 699 (2024) (noting that the right to a jury trial extends to legal claims, not equitable ones). That said, neither party raised this issue, and we therefore do not address the question here.

## II. ISSUES ON APPEAL

1. Whether the district court erred when it failed to direct a verdict on all of Genho's claims under ICRA.

2. Whether the district court erred when it awarded attorney fees to Genho under Idaho Code section 12-120(3).

3. Whether the district court erred when it awarded attorney fees to Genho on his foreclosure action.

4. Whether either party is entitled to attorney fees on appeal.

## III. STANDARDS OF REVIEW

When reviewing a decision to grant or deny a directed verdict, this Court applies the same standard the trial court applied when originally ruling on the motion. *Ackerschott v. Mountain View Hosp., LLC*, 166 Idaho 223, 229, 457 P.3d 875, 881 (2020) (citing *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986)). "Whether a verdict should be directed 'is purely a question of law and on those questions, the parties are entitled to full review by the appellate court without special deference to the views of the trial court.'" *Id.* at 229–30, 457 P.3d at 881–82 (citation omitted). In reviewing the record, we determine

> whether there was sufficient evidence to justify submitting the claim to the jury, viewing as true all adverse evidence and drawing every legitimate inference in favor of the party opposing the motion for a directed verdict. This test does not require the evidence be uncontradicted, but only that it be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper. Where a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied.

*Id.* (citing *Alexander v. Stibal*, 161 Idaho 253, 259, 385 P.3d 431, 437 (2016)).

"This Court exercises free review over the district court's conclusions of law." *Doe v. Shoshone-Bannock Tribes*, 159 Idaho 741, 745, 367 P.3d 136, 140 (2016) (brackets omitted) (citing *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605, 38 P.3d 1258, 1261 (2002)). Issues of statutory interpretation are questions of law which this Court reviews de novo. *IDHW v. John Doe (2022-32)*, 171 Idaho 677, 680, 525 P.3d 715, 718 (2023).

An award of attorney fees and costs is subject to an abuse of discretion standard of review. *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 669, 676, 434 P.3d 1275, 1282 (2019). When this Court reviews an alleged abuse of discretion by a trial court, we examine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices

7

available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## IV. ANALYSIS

**A.** **The district court did not err by declining to direct the verdict on Genho's unjust enrichment, quantum meruit, conversion, and lien claims.**

The district court found that Genho acted as a contractor and partially performed on the second contract before he was properly registered. Neither party challenges this finding on appeal. The issue on appeal is whether ICRA permits equitable remedies for contractors who are not registered under the Act at the beginning of a project, but who become registered midway through the project. As explained below, we conclude that it does.

Riverdale argues that the district court erred when it failed to direct the verdict pursuant to ICRA against all of Genho's claims.[3] Riverdale asserts that the plain language of ICRA bars Genho from bringing any claims because he was not a registered contractor during all times he was performing contractor work. Riverdale asserts that this is true for all claims, not just contract claims. Thus, the district court should have issued a directed verdict against Genho's unjust enrichment, quantum meruit, conversion, and lien claims. Riverdale asserts that allowing these claims to proceed renders ICRA's penalties meaningless because, even though the breach of contract claim was dismissed, unregistered contractors can do an end-run around ICRA. Such contractors can bring equitable and mechanic's lien claims, potentially receiving an amount of damages equivalent to what was sought on the illegal contract claim.

Genho argues that the district court properly followed this Court's holdings in *AED, Inc. v. KDC Investments*, *LLC*, 155 Idaho 159, 307 P.3d 176 (2013), and *ParkWest Homes v. Barnson*, 149 Idaho 603, 238 P.3d 203 (2010), which permit equitable remedies for contractors who become registered midway through the project, if the post-registration work is severable from the pre-registration work.

In 2005, the Idaho Legislature passed ICRA. *See* I.C. § 54-5201. The Act states in its "Declaration of policy":

---

[3] "This Court has held that a party must either renew its motion for a directed verdict at the close of all the evidence or file a motion for judgment notwithstanding the verdict ("JNOV") before it can appeal the denial of a motion for a directed verdict." *Streamline Builders, LLC v. Chase*, Docket No. 50953, slip op. at 6–7 (Idaho Dec. 5, 2024) (first citing *Smith v. Sharp*, 85 Idaho 17, 27, 375 P.2d 184, 190 (1962); then citing *Christensen v. Stuchlik*, 91 Idaho 504, 508, 427 P.2d 278, 282 (1967)). That said, Genho did not raise this issue. Thus, we reach the merits of Riverdale's arguments.

The legislature finds and declares that the practice of construction in the state of Idaho affects the public health, safety and welfare of its citizens. The legislature further finds that it is in the public interest to provide a mechanism to remove from practice incompetent, dishonest, or unprincipled practitioners of construction. To aid in fulfilling these purposes, this chapter provides for the registration of construction contractors within the state of Idaho.

I.C. § 54-5202. Contractors are required to register in accordance with the Act:

(1) On and after January 1, 2006, it shall be unlawful for any person to engage in the business of, or hold himself out as, a contractor within this state without being registered as required in this chapter.

(2) It shall be unlawful for a contractor to engage any other contractor who is required by this chapter to be registered as a contractor unless such other contractor furnishes satisfactory proof to the contractor that he is duly registered under the provisions of this chapter.

(3) Any person who engages in the business or acts in the capacity of a contractor, whether or not duly registered, has thereby submitted to the jurisdiction of the state of Idaho and to the administrative jurisdiction of the Idaho contractors board, and shall be subject to all penalties and remedies available under Idaho law for any violation of this chapter.

I.C. § 54-5204(1)–(3). Contractors not registered as required are prohibited from filing lien claims:

A contractor who is not registered as set forth in this chapter, unless otherwise exempt, shall be denied and shall be deemed to have conclusively waived any right to place a lien upon real property as provided for in chapter 5, title 45, Idaho Code.

I.C. § 54-5208. Most relevant for this appeal, ICRA provides civil penalties for failure to register as a contractor under the Act:

(2) No person engaged in the business or acting in the capacity of a contractor, unless otherwise exempt, may bring or maintain *any action in any court* of this state *for the collection of compensation for the performance of any act or contract* for which registration is required by this chapter without alleging and proving that he was a duly registered contractor, or that he was otherwise exempt as provided for in this chapter, *at all times during the performance of such act or contract*.

I.C. § 54-5217(2) (emphasis added).

The parties emphasize four of our previous cases in this appeal: (1) *Farrell v. Whiteman*, 146 Idaho 604, 200 P.3d 1153 (2009); (2) *ParkWest Homes v. Barnson*, 149 Idaho 603, 238 P.3d 203 (2010); (3) *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 277 P.3d 374 (2012); (4) *AED, Inc. v. KDC Investments*, *LLC*, 155 Idaho 159, 307 P.3d 176 (2013).

In *Farrell*, a Michigan architect contracted to perform services on a condominium project in Ketchum. 146 Idaho at 607, 200 P.3d at 1156. Idaho's architecture licensing law was similar in many

respects to ICRA.[4] Farrell was not licensed in Idaho at the beginning of the project, but he became licensed midway through. *Id.* at 608, 200 P.3d at 1157. Although the Court found the contract illegal, Farrell was granted some recovery for the post-licensure work. *Id.* at 611, 200 P.3d at 1160. "Although Farrell's work performed while unlicensed was illegal, his actions after receiving his license were certainly legal. 'Where a transaction is composed of both benign and offensive components and the different portions are severable, the unobjectionable parts are generally enforceable.'" *Id.* at 611, 200 P.3d at 1160 (quoting *Nelson v. Armstrong*, 99 Idaho 422, 426, 582 P.2d, 1100, 1104 (1978)). This Court then determined that a party to an illegal contract may sometimes receive recovery to protect the public interest. *Id.* at 611–12, 200 P.3d at 1160–61. We explained that leaving the parties as the Court found them would result in a windfall to the property owner-party when the architecture work was not defective and Farrell was licensed in another state. *Id.* at 612, 200 P.3d at 1161. The case was remanded so the district court could determine unjust enrichment damages incurred *before* Farrell became licensed and quantum meruit damages for work done *after* Farrell was licensed. *Id.* at 613, 200 P.3d at 1162.

*ParkWest* presented a case arising under ICRA. A contractor who was unregistered when he signed the contract but registered when he performed the work filed a mechanic's lien after a payment dispute. 149 Idaho at 604–05, 238 P.3d at 204–05. This Court held that ParkWest could foreclose on its mechanic's lien despite being unregistered at the time of contracting because a mechanic's lien arises out of work and labor performed, not for simply entering a contract. *Id.* at 608, 238 P.3d at 208. Chief Justice Eismann, writing for the Court, noted that Idaho Code section 54-5208 is written in the present tense: "[a] contractor who *is not registered*. . . ." *Id.* (emphasis in original). Thus, the contractor who becomes registered midway through the project may file a lien on work performed after becoming registered. *Id.* Citing *Farrell*, the opinion explained that although work done by ParkWest while unregistered was illegal, work done after registration was legal. *Id.*

In *Stonebrook*, an unregistered contractor (an LLC) tried to foreclose a mechanic's lien on a house after the homeowners failed to pay the amount owed for the work. 152 Idaho at 929, 277 P.3d at 376. This Court affirmed the district court's grant of summary judgment dismissing the lien claim because Stonebrook had taken no affirmative steps to comply with ICRA during the project. *Id.* at

---

[4] The law provided that any person who engaged in the practice of architecture or offered to practice without a license was guilty of a misdemeanor. However, the architecture licensing scheme did not prevent unlicensed architects from maintaining a cause of action.

931–32, 277 P.3d at 378–79. We held that although a member of the LLC was properly registered, the LLC had to register because it entered the contract, provided the labor and materials, and filed the lien action. *Id.* at 932, 277 P.3d at 379. Stonebrook argued that preventing recovery would lead to a harsh result, but this Court concluded that the legislature intended to permit harsh results when a contractor utterly fails to follow ICRA's requirements. *Id.* at 932–33, 277 P.3d at 379–80.

In *AED*, another ICRA case, this Court clarified that subsequent registration under the Act does not validate an illegal contract. 155 Idaho at 168, 307 P.3d at 185. In *AED*, the contractor submitted a bid while unregistered but became registered before beginning work on the project. *Id.* However, ICRA provides that a person acts as a contractor at the time they submit a bid. *Id.* at 167, 307 P.3d at 184 (citing I.C. § 54-5203(4)(a) (amended 2022)). Thus, the contract in *AED* was illegal from execution and could not be validated by later compliance with ICRA. *Id.* at 168–69, 307 P.3d at 185–86. Because AED never began performance on the illegal contract, this Court declined to award equitable remedies. *Id.* at 169, 307 P.3d at 186. We noted, however, that if AED had performed, equitable remedies may have been available to it if the post-licensing performance were severable. *Id.* ("[I]f AED had started performing its obligations under the contract prior to KDC's termination, it may have been able to recover under an unjust enrichment theory, but in the absence of performance, AED is not entitled to recover.").

1. ParkWest *is not overruled or limited.*

Riverdale argues that the plain language of ICRA prohibits contractors from bringing "*any* action" for the "performance of *any* act or contract for which registration is required . . . *at all times* during the performance of such act or contract" and therefore bars Genho's equitable claims. I.C. § 54-5217(2) (emphasis added). Riverdale asks that we limit, or even overrule *ParkWest*.

Riverdale claims that the district court incorrectly relied on *AED* and *ParkWest* to deny Riverdale's directed verdict, arguing that *ParkWest* was wrongly decided because it ignores the plain words of the statute requiring contractors to be registered "at all times." Riverdale also asserts that *AED* was wrongly decided because "it simply repeats a wrong decision[ ]" —*ParkWest*. Riverdale concedes that denying a contractor the ability to obtain a lien is a harsh penalty but says that "is the very point of the [ICRA] provision." (underline in original). Riverdale extends this argument to *AED*, asserting that this Court's statement that AED might have been entitled to equitable remedies if it had started work on the second project is dicta because it was not integral to the holding.

11

Riverdale also argues that the *Farrell* public interest exception does not apply here because there is no windfall—Steele, in its view, has already paid or overpaid Genho for his work.

We first address Riverdale's argument that *ParkWest* and *AED* are wrong. In its opening brief to this Court, Riverdale suggests that *ParkWest* ignored the plain language of ICRA, and that *AED* simply repeats that wrong decision. In its reply brief, Riverdale directly argues that *ParkWest* should be overruled or limited to its facts.

> When there is controlling precedent on questions of Idaho law "the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990).

*Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006). Riverdale has not shown that *ParkWest* is manifestly wrong. Nor has it shown that *ParkWest* has proven unjust, unwise, or overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice. In its opening brief, Riverdale simply argues that *ParkWest* was mistaken, but Riverdale has not met the high burden required to overrule controlling precedent. Accordingly, we decline to overrule or limit *ParkWest*.

Further, Riverdale's argument that there is no windfall because Genho has already been paid is unpersuasive. It simply restates Riverdale's original position: that Genho was owed nothing. The argument fails to acknowledge that the jury saw it otherwise and awarded damages. "'This Court will not overturn a jury verdict if it is supported by substantial and competent evidence.'" *SRM Arms, Inc. v. GSA Direct, LLC*, 169 Idaho 196, 207, 494 P.3d 744, 755 (2021) (quoting *Vanderford Co. v. Knudson*, 144 Idaho 547, 552, 165 P.3d 261, 266 (2007)). Such "evidence need only be of sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper." *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, 794, 435 P.3d 1106, 1114 (2019) (citing *Highland Enters., Inc., v. Barker*, 133 Idaho 330, 337, 986 P.2d 996, 1003 (1999)). The jury's determination is supported by substantial, competent evidence and we will not disturb it here.

### 2. *Since ParkWest remains good law, it permits equitable remedies for acts performed after registration, when those acts are severable from the illegal conduct.*

This Court in *ParkWest* put this matter to rest. Equitable remedies are allowed under the Act if a contractor becomes licensed during a project, and the post-licensing work is severable from the work before licensing. Thus, once a contractor becomes registered, subsequent acts that are

severable from unregistered acts comply with ICRA. *See Farrell*, 146 Idaho at 611, 200 P.3d at 1160 ("Although Farrell's work performed while unlicensed was illegal, his actions after receiving his license were certainly legal."); *see also AED*, 155 Idaho at 169, 307 P.3d at 186 ("*Farrell* stands for the proposition that if a contractor becomes licensed part of the way through performance of a contract and if the post-licensing performance is severable, the licensee may be entitled to equitable remedies for the services rendered after licensure.").

Therefore, we hold that when a contractor becomes registered midway through a project, he or she may pursue equitable remedies for severable acts performed after registration. As we noted in *ParkWest*, this strikes a balance between the various public policies at play in these cases. The legislature, through ICRA, has determined that the public interest is served by requiring contractors to be registered. I.C. § 54-5202. On the other hand, the public interest is also served by providing remedies against those who might exploit an unregistered contractor who otherwise does good work. This conclusion does not render ICRA meaningless as Riverdale suggests. Rather, it balances the interests at play, focuses on *all* of the language of ICRA, and provides a mechanism for contractors to recover for work they perform after they become legal by registration. *See ParkWest*, 149 Idaho at 608, 238 P.3d at 208. That said, we continue to emphasize that liens may not be filed based on pre-registration work; illegal contracts remain unenforceable. *Id.* at 608–09, 238 P.3d at 208–09.

The result sought by Riverdale would create a windfall in favor of the property owner. While Riverdale argues that there is no windfall because they paid all Genho was owed, the jury found against Riverdale and we uphold that conclusion. We have long recognized that in some cases the public interest is best served by permitting the unregistered contractor some recovery. *See Farrell*, 146 Idaho at 611–12, 200 P.3d at 1160–61 (noting that in some cases the public interest is served by allowing recovery to avoid a windfall to a property owner); *see also Barry v. Pacific W. Const., Inc.*, 140 Idaho 827, 833, 103 P.3d 440, 446 (2004) (affirming recovery to unlicensed public works contractor under unjust enrichment to further public policy interests). This is that kind of case.

Other courts that have confronted this issue have come to the same conclusion. For example, in *Day v. West Coast Holdings, Inc.*, 699 P.2d 1067 (Nev. 1985), the Nevada Supreme Court enforced a contract made in violation of Nevada's contractor registration act. The registration

13

provision at issue there was substantially similar to Idaho Code section 54-5217(2).[5] In *Day*, a case that preceded *Farrell* by over two decades, a general contractor executed a contract with a subcontractor who did not have a specialty landscaping license. *Id.* at 1069. The general contractor knew the subcontractor did not have the necessary license but agreed to the contract anyway. *Id.* After the subcontractor completed the job, the general contractor refused to pay for its services. *Id.* The general contractor sued the subcontractor to discharge a lien, among other things. *Id.* The subcontractor counterclaimed for breach of contract and unjust enrichment. *Id.* After losing at trial, the general contractor appealed. *Id.* The Nevada Supreme Court held that it would be inequitable to allow the general contractor to retain the benefit of the contract when it entered the contract knowing the subcontractor lacked the requisite license. *Id.* at 1071. To promote the public interest and prevent unjust enrichment, the court enforced the contract against the general contractor. *Id.* Persuaded by *Day*, this Court in *Trees v. Kersey*, 138 Idaho 3, 56 P.3d 765 (2002), held that an unlicensed public works contractor could maintain a suit for fraud despite non-compliance with the Idaho Public Works Contractor License Act which provided nearly identical penalties to ICRA. 138 Idaho at 10, 56 P.3d at 772.

Applying the *ParkWest* authority here, we conclude that the district court did not err. Although the underlying contract was illegal, Genho was registered at all times during the performance of the *acts* for which his equitable claims sought compensation. This follows our reading of *ParkWest*, *AED*, and *Farrell.* The two contracts were severable. While Genho could not recover contract damages on the second contract, he could maintain equitable claims against the Resort to recover for acts performed after registration.

"Equitable remedies are available when 'there is no adequate remedy at law,' and if 'sufficient grounds to invoke equity, such as mutual mistake, fraud, or impossibility, are present.'" *AED*, 155 Idaho at 166, 307 P.3d at 183 (quoting *Bolognese v. Forte*, 153 Idaho 857, 864, 292 P.3d 248, 255 (2012)). Genho had no adequate remedy at law as the breach of contract claim was barred by ICRA. Standing alone, Genho would have no remedies available because ICRA provides harsh penalties to encourage registration. *Stonebrook*, 152 Idaho at 932–33, 277 P.3d at 379–80. But

---

[5] The Nevada provision reads "No person . . . engaged in the business or acting in the capacity of a contractor shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that such person . . . was a duly licensed contractor at all times during the performance of such act or contract and when the job was bid." Nev. Rev. Stat. Ann. § 624.320 (West 2023).

sufficient grounds to invoke equity are present in this case. *See ParkWest*, 149 Idaho at 608–609, 238 P.3d at 208–209; *AED*, 155 Idaho at 169, 307 P.3d at 186. Like the general contractor in *Day*, Steele-Babneau knew Genho was unlicensed, encouraged him to get his license, and while awaiting it, gave him money and told him to buy materials. Riverdale accepted the benefit of Genho's performance. Finally, the jury found that Riverdale had been unjustly enriched by Genho's work. Therefore, we affirm the district court's denial of a directed verdict on the unjust enrichment and quantum meruit claims.

### 3. *The conversion claim is not covered by ICRA.*

Riverdale argues that the district court erred in failing to direct a verdict on the conversion claim because the claim was "brought for the collection of compensation arising out of the illegal contract because the materials were for the project[,] but Genho was not registered at all times." We disagree.

ICRA states in relevant part that an unregistered contractor may not maintain an action for "the collection of *compensation for the performance of any act* or contract." I.C. § 54-5217(2) (emphasis added). By the Act's plain language, claims for conversion fall outside its ambit. Those tort claims may proceed by an unlicensed or licensed contractor.

"A claim of conversion requires proof of three elements: '(1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property.'" *Sallaz v. Rice*, 161 Idaho 223, 226, 384 P.3d 987, 990 (2016) (quoting *Taylor v. McNichols*, 149 Idaho 826, 846, 243 P.3d 642, 662 (2010)). Conversion is distinct from "collection of compensation" because the claim is independent of any compensation owed to the contractor. Genho's conversion claim sought recovery for materials he purchased that Riverdale wrongfully retained. This is different than seeking compensation for the performance of an act for which registration was required. Therefore, we affirm the denial of a directed verdict on the conversion claim.

### 4. *The district court did not err in denying a directed verdict on the lien claim.*

Riverdale argues that the district court should have directed a verdict on the lien foreclosure claim because the underlying contract was illegal. But our decision in *ParkWest* is controlling. There, we held that a contractor could foreclose on a lien even though the underlying contract was illegal. *ParkWest*, 149 Idaho at 608, 238 P.3d at 208. This is because "[a] mechanic's lien is granted for 'the work or labor done . . . or materials furnished'. . . . It is not granted simply for entering into

15

a construction contract." *Id.* (quoting I.C. § 45-501). The contractor may not file a lien for work performed while unregistered, but he may file a lien for work done while registered. *Id.* at 608–09, 238 P.3d at 208–09. Genho was entitled to a lien for the severable work performed after becoming registered. The district court did not err in denying Riverdale's motion for a directed verdict on the lien foreclosure claim.

**B.    Genho was entitled to attorney fees for his unjust enrichment and quantum meruit claims under Idaho Code section 12-120(3), but not for his conversion claim.**

The district court awarded Genho attorney fees as the prevailing party on his unjust enrichment, quantum meruit, and conversion claims under Idaho Code section 12-120(3). Riverdale argues this was erroneous for two reasons. First, they argue that our holding in *Farrell* precludes an award of attorney fees under section 12-120(3) even when a party is permitted some recovery. Second, they argue that the district court erred in awarding attorney fees for the conversion claim because conversion is a tort, and therefore the basis for Genho's recovery for conversion is a tort rather than a commercial transaction.

Idaho Code section 12-120(3) permits the prevailing party to recover reasonable attorney fees in actions on contracts or "commercial transactions." I.C. § 12-120(3). "[A]ll transactions except transactions for personal or household purposes" are commercial transactions. *Id.*

> There are "two stages of analysis to determine whether a prevailing party could avail itself of I.C. § 12-120(3): (1) there must be a commercial transaction that is integral to the *claim*; and (2) the commercial transaction must be the basis upon which recovery is sought."

*Breckenridge Prop. Fund 2016, LLC v. Wally Enters., Inc.*, 170 Idaho 649, 663, 516 P.3d 73, 87 (2022) (emphasis added, citations omitted). This Court also observed that that it is not enough for the claimed commercial transaction to be only "tangentially involved" in the litigation. *Id.* Therefore, we look at the gravamen of the lawsuit, as well as the gravamen of each individual claim. *Id.* at 664, 516 P.3d at 88. When the claims based on a contract or commercial transaction are "inseparably intertwined" with claims that are not commercial in nature, and the fee request does not apportion the attorney fees on each claim, attorney fees are not recoverable. *See Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 77–79, 910 P.2d 744, 749–51 (1995). But, if the gravamen of the lawsuit is commercial in nature, and a party prevails on some claims that qualify as commercial transactions under section 12-120(3), that party is entitled to attorney fees under section 12-120(3) on those claims. Thus, to be safe, a party claiming attorney fees under the statutory authority of section 12-120(3) must apportion fees between its causes of action. *See Knudsen v. J.R. Simplot Co.*, 168 Idaho

16

256, 273, 483 P.3d 313, 330 (2021). "Where fees were not apportioned between a claim that qualifies under I.C. § 12-120(3) and one that does not, no fees are to be awarded." *Id*. (quoting *Rockefeller v. Grabow*, 136 Idaho 637, 645, 39 P.3d 577, 585 (2001)).

### 1. *Unjust Enrichment and Quantum Meruit Claims*

Riverdale argues that Idaho Code section 12-120(3) does not apply to illegal contracts. Indeed, this Court noted that attorney fees are not recoverable when a party's claim is based wholly on an illegal contract:

> In the case of an illegal contract, neither party may claim the benefit of Idaho Code § 12-120(3). *Trees v. Kersey*, 138 Idaho 3, 12, 56 P.3d 765, 774 (2002); *Kunz v. Lobo Lodge, Inc.*, 133 Idaho 608, 612, 990 P.2d 1219, 1223 (Ct. App. 1999). Even when a party is permitted some recovery on an illegal transaction, the court may not award attorney fees under Idaho Code § 12-120(3). *Barry*, 140 Idaho at 835, 103 P.3d at 448. Therefore, the court erred in awarding attorney fees to Farrell based on an implied-in-fact contract, which was, at least up until February 17, 2004, illegal. We vacate the fee award, leaving it to the district court to determine the fee issue on remand.

*Farrell*, 146 Idaho at 613, 200 P.3d at 1162.

Genho acknowledges that *Farrell* prohibits awarding attorney fees on wholly illegal contracts under Idaho Code section 12-120(3). However, he argues that the district court did not err because it awarded fees based on the existence of a "commercial transaction," rather than based on an illegal contract. The district court concluded that the equitable claims supported an award of attorney fees because "a commercial transaction is integral to the claim" and "is the basis on which recovery is being sought."

Despite Riverdale's assertions, section 12-120(3) applies when a legal part of a commercial transaction is severable from the illegal part. In *Farrell II*, this Court clarified this point, affirming an award of attorney fees that the trial court awarded for the *legal* portions of Farrell's contract, even though portions of Farrell's work were completed under an illegal contract. *Farrell v. Whiteman* (*Farrell II*), 152 Idaho 190, 268 P.3d 458 (2012). We clarified that although the underlying contract was illegal, it was severable from the *legal* implied-in-fact contract, for which Farrell recovered damages under quantum meruit. *See Farrell*, 146 Idaho 604, 611, 200 P.3d 1153, 1160 (2009) (discussing the severability of both parts of the architectural agreement). We noted that section 12-120(3) does not require a *contract* between the parties; it only requires a *commercial transaction*. *Farrell II*, 152 Idaho at 196, 268 P.3d at 464. As a result, Farrell was entitled to attorney fees because he based his request for fees on the *legal* portions of his contract. *Id. Farrell* is distinguishable from

*Barry* because Farrell became licensed midway through the project – unlike *Barry*, where the contractor never held the required license. *Barry*, 140 Idaho at 830, 103 P.3d at 443.

Thus, section 12-120(3) may apply even when a contract is implied through equitable doctrines like quantum meruit. For example, in *Clayson v. Zebe*, this Court affirmed attorney fees based on the commercial transaction among the parties. 153 Idaho 228, 280 P.3d 731 (2012). There, the district court awarded attorney fees because even though the parties had not come to an express agreement, their conduct implied an agreement to pay for refurbishment expenses, which was a commercial transaction. *Id.* at 233, 280 P.3d at 736; *see also Fox v. Mountain W. Elec., Inc.*, 137 Idaho 703, 52 P.3d 848 (2002) (affirming attorney fees under 12-120(3) on an implied-in-fact contract claim).

Applying these authorities to our analysis here, we hold that the district court properly awarded attorney fees on the unjust enrichment and quantum meruit claims. There is no question, as the district court recognized, that a commercial transaction brought these parties together. The district court found that the parties' conduct after Genho registered implied a contract where Genho would perform work for the Resort, and Riverdale implicitly promised to pay. This is a commercial transaction. The next question is whether the commercial transaction was integral to the claim. This prong is met because the commercial transaction was essential to Genho's unjust enrichment and quantum meruit claims. Finally, the commercial transaction must undergird the relief that is sought. This prong is easily met. The implied-in-fact contract formed the basis of Genho's unjust enrichment and quantum meruit claims. Therefore, the district court did not abuse its discretion in awarding attorney fees to Genho on those claims.

### 2. Conversion Claim

Riverdale argues that section 12-120(3) was improperly applied to the conversion claim because conversion is a tort and the basis for recovery was tortious conduct rather than a commercial transaction. Applying our analysis from *Breckenridge*, the district court determined the commercial transaction was integral to the claim and supported recovery because "without the commercial transaction, i.e., the bid, acceptance, and performance of the work . . . the equipment and material Riverdale converted for its own use" would not have been at Riverdale's property.

As noted above, "[a] claim of conversion requires proof of three elements: '(1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property.'" *Sallaz v.*

*Rice*, 161 Idaho 223, 226, 384 P.3d 987, 990 (2016) (quoting *Taylor v. McNichols*, 149 Idaho 826, 846, 243 P.3d 642, 662 (2010)).

In *Brower v. E.I. DuPont De Nemours & Co.*, 117 Idaho 780, 792 P.2d 345 (1990), we stated that an

> award of attorney's fees is not warranted every time a commercial transaction is remotely connected with the case. Rather, the test is whether the commercial transaction comprises the gravamen of the lawsuit. Attorney's fees are not appropriate under I.C. § 12-120(3) unless the commercial transaction is integral to the claim, *and constitutes the basis upon which the party is attempting to recover*. To hold otherwise would be to convert the award of attorney's fees from an exceptional remedy justified only by statutory authority to a matter of right in virtually every lawsuit filed.

117 Idaho at 784, 792 P.2d at 349 (1990) (emphasis added). Recognizing that holding, we have also held that "[w]here the gravamen of a claim is a commercial transaction, 'the prevailing party may be entitled to attorney fees for claims that are fundamentally related to the commercial transaction yet sound in tort.'" *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 272, 483 P.3d 313, 329 (2021) (quoting *Carrillo v. Boise Tire Co.*, 152 Idaho 741, 756, 274 P.3d 1256, 1271 (2012)). In *Knudsen*, this Court awarded attorney fees under section 12-120(3) based on a negligent infliction of emotional distress claim. *Id.* at 273, 483 P.3d at 330. There, the employer fraudulently misrepresented employment duties, which breached a duty owed to the employee. *Id.*

We have never applied a "but for" test to determine whether section 12-120(3) applies when the claim involves tortious conduct that also involves a commercial transaction. To do so would broaden section 12-120(3) beyond its intended scope. In *Brower*, a farmer sued a chemical manufacturer alleging products liability after buying an experimental herbicide from the local co-op. 117 Idaho at 780–81, 792 P.2d at 345–46. This Court held that the commercial transaction (buying the herbicide) was too remote from the farmer's use of the herbicide (applying the herbicide to his crops) to support an award of attorney fees under section 12-120(3) against the manufacturer. *Id.* at 784, 792 P.2d at 349. Applying a "but for" test to *Brower* would lead to the opposite conclusion. Brower would not have had a products liability claim against the manufacturer if he had not engaged in a commercial transaction to purchase the chemicals. We conclude that the "but for" test goes too far here.

Applying the framework we announced in *Breckenridge* demonstrates the district court erred in awarding attorney fees on the conversion claim. Even though the commercial transaction led to Genho leaving tools and materials at the worksite, it was the independent, tortious behavior of

19

Riverdale that caused his tort damages; nothing about the commercial transaction was part of the elements of Genho's conversion claim. Rather, it was Riverdale's wrongful possession of Genho's materials that gave rise to the claim. Accordingly, we reverse the decision and vacate the judgment awarding attorney fees as to this part of Genho's lawsuit.

**C.      The district court did not err when it awarded attorney fees to Genho for his foreclosure action.**

Having held that Genho could maintain a foreclosure action, we now turn to attorney fees awarded to him on that claim. The district court awarded attorney fees to Genho for maintaining his foreclosure action under Idaho Code section 45-513. That statute provides in relevant part "[t]he court shall also allow as part of the costs the moneys paid for filing and recording the claim, and reasonable attorney's fees." I.C. § 45-513. The award of attorney fees is mandatory. *See Regdab, Inc. v. Graybill*, 165 Idaho 293, 296, 444 P.3d 323, 326 (2019). Accordingly, the district court did not abuse its discretion in awarding Genho attorney fees and costs for his foreclosure action, and we affirm the award of attorney fees pursuant to Idaho Code section 45-513.

**D.      Neither party is entitled to attorney fees on appeal.**

Both parties seek attorney fees on appeal. Riverdale claims fees under Idaho Code section 12-121. Genho claims fees on appeal under Idaho Code sections 12-120(3) and 12-121. Genho and Riverdale have each prevailed in part on this appeal. "Where both parties prevail in part on appeal, this Court does not award attorney fees to either party." *Burns Concrete, Inc. v. Teton Cnty.*, 172 Idaho 82, 95, 529 P.3d 747, 760 (2023) (quoting *AgStar Fin. Servs., ACA v. Nw. Sand & Gravel, Inc.*, 168 Idaho 358, 374, 483 P.3d 415, 431 (2021)). As a result, we decline to award attorney fees to either party.

## V.      CONCLUSION

For the reasons explained above, this Court: (1) affirms the denial of directed verdict on Genho's equitable and foreclosure claims; and (2) reverses the decision awarding attorney fees on the conversion claim. We also affirm the award of attorney fees on the equitable and foreclosure claims. We vacate the judgment and remand for the district court to modify the judgment consistent with this opinion.

JUSTICES BRODY, MOELLER, ZAHN, and MEYER concur.

20