# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 51451

| | | |
|---|---|---|
| DANIEL VANRENSELAAR and THERESA VANRENSELAAR, husband and wife, | ) ) ) ) | |
| Plaintiffs-Respondents-Cross Appellants | ) ) ) | Boise, June 2025 Term |
| v. | ) ) | Opinion Filed: September 4, 2025 |
| GABRIEL BATRES and MARIA BATRES, husband and wife, | ) ) ) | Melanie Gagnepain, Clerk |
| Defendants-Appellants-Cross Respondents. | ) ) ) ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Gene A. Petty, District Judge.

The district court is <u>affirmed in part</u> and <u>reversed in part</u>, and the case is <u>remanded</u>.

Shep Law Group, Meridian, for Defendants-Appellants-Cross Respondents. Ronald R. Shepherd argued.

Mooney Weiland, PLLC, Boise, for Plaintiffs-Respondents-Cross Appellants. Daniel E. Mooney argued.

---

BEVAN, Chief Justice.

After they purchased a home from the Batreses, the VanRenselaars discovered significant defects that the Batreses failed to disclose on the property condition disclosure form. They sued the Batreses three years after the sale, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Idaho Property Condition Disclosure Act (Disclosure Act), and fraud. A jury found in favor of the VanRenselaars on all but the breach of the implied covenant of good faith and fair dealing claim and awarded $63,024 in damages. After trial, the district court granted the Batreses' motion for directed verdict on the Disclosure Act claim, finding that it was barred by the three-year statute of limitations set forth in Idaho Code section 5-218(1). The court denied the Batreses' motion for directed verdict on the fraud and breach of contract claims.

1

The Batreses appeal and argue the fraud claim was barred by the three-year statute of limitations set forth in Idaho Code section 5-218(4) and that the VanRenselaars failed to prove every element of fraud by clear and convincing evidence. Next, they argue the district court erred when it instructed the jury on the breach of contract claim because that claim was inadequately pleaded and not supported by substantial evidence. Finally, the Batreses argue that the jury award must be set aside because it is impossible to determine whether the damage award was based in part on the jury's finding of a violation of the Disclosure Act, a claim which was dismissed after trial.

The VanRenselaars cross-appeal and argue that the district court erred by dismissing the Disclosure Act claim on statute of limitations grounds and by denying their request for attorney fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual background

The Batreses purchased the subject home in 1982. It was an old home, built in 1939. They lived in the home for approximately forty years, until 2012. Over the years, they made improvements to the home, including a kitchen addition and converting the attic space into a bedroom loft. According to Maria Batres, carpenters, electricians, and builders were hired to build the kitchen addition. The Batreses moved out in 2012 in preparation of selling the house without a realtor. While the home was vacant, the Batreses had more renovations done. These included: installing a garage door on the detached garage; a new water heater; granite countertops; a new sink, faucet, and tile in the kitchen; a new toilet and tile in the main floor bathroom, and tile in the basement shower.

The VanRenselaars began their search for a home in Idaho in late 2016 or early 2017. They hired a real estate agent and found a flyer for the Batreses' home listing it as "for sale by owner." The VanRenselaars were interested in the house because it had their preferred number of rooms and bathrooms, and it appeared to have been newly renovated. The flyer read: "Updates – Kitchen, Bathrooms, Garage." This was important to the VanRenselaars because they would be spending "every penny" they had on their new home.

The VanRenselaars made an offer on the house, contingent, among other things, on an inspection. The Batreses accepted the offer. The parties then executed a Purchase and Sale Agreement (PSA) and the Batreses gave the VanRenselaars a property condition disclosure form,

2

as required by the Disclosure Act. Receipt of the form was acknowledged by the VanRenselaars on April 4, 2017. They reviewed the form to make sure there were no serious problems listed. They knew the house was old and understood there may be some minor issues such as old appliances or windows that were not energy star rated.

The property condition disclosure form includes many questions, three of which are relevant for the present appeal: 1) Have any substantial additions or alterations been made without a building permit? 2) Are there any structural problems with the improvements? and 3) Are there any structural problems with the foundation? A property owner can check "yes," "no," or "do not know" and may leave remarks to each of these three questions. The Batreses answered "no" to each of the questions.

The VanRenselaars hired a company to perform an inspection of the home. The inspection revealed defects with the home's plumbing and electrical systems. The report also highlighted "chance of structural movement" with the foundation; however, the condition was "acceptable." Despite these concerns, the VanRenselaars decided to move forward and removed the inspection contingency without requesting that the Batreses make repairs to the plumbing or electrical systems.

Closing was originally set for May 2017, but the parties agreed to move the closing to the end of June so the VanRenselaars could establish employment history to obtain a loan. The Batreses allowed the VanRenselaars to move into the home prior to closing. The VanRenselaars rented the property from June 1 until the sale closed on June 29.

Shortly after moving in, while still renting the home, the VanRenselaars noticed a problem with the water heater. They called a technician who noted that the intake and output lines of the water heater were swapped. The VanRenselaars paid for the repair but were reimbursed by the Batreses. The VanRenselaars showed the Batreses the water heater problem in the basement and asked who installed the water heater. Gabriel Batres replied that he installed it. About a week and a half after moving in, the VanRenselaars were moving heavy furniture across the deck with a hand truck when one of the wheels poked through a deck board. One of the steps leading up to the deck also broke. Nevertheless, the sale closed on June 29, 2017.

In November 2017, the VanRenselaars encountered a problem with the furnace. They were having frequent headaches. Daniel VanRenselaar noticed that he could feel a strong draft coming off the water heater when the furnace was on. The VanRenselaars determined that they had exhaust

gasses coming back into the house and called an HVAC specialist. This issue led the VanRenselaars to search for a record of permits with the City of Nampa. Daniel VanRenselaar requested a full history of work and modification permits. Daniel discovered a permit for the carport addition. The builder was listed as Gabriel Batres. Daniel also received a permit for the air conditioning heater coil replacement and installation of a wood stove. Those were the only two permits Daniel discovered. Based on this, Daniel believed that most of the additions and improvements to the home had been done without the proper permits.

Patrick Sullivan, the director of building safety and facilities development for the City of Nampa, testified that the city switched record-keeping platforms in 2015 and that not all of the records were transferred to the new system. Also, a flood destroyed some hard-copy records prior to the switch in 2015. As a result, not all permits issued by the city would appear in a search. However, Sullivan also testified that the city would have *some* record—either a permit application or contact information for records for the previous 30 years. Sullivan did not find a record of a permit or inspection for the home's kitchen addition. Sullivan also testified that contractors are responsible for obtaining permits, and homeowners are not supposed to pull permits for the contractor.

The VanRenselaars' inquiry into their new home revealed that the main water shut off for the house was located behind tile in the basement shower. Sewer gasses were venting back into the house unless the shower drain was flooded. The header beam above the garage door still had the purchase order sticker on it with "Batres" listed as the customer. Because of this, they contacted the city and asked if it would do a thorough inspection of the home. Inspectors Olson and Willis came and inspected the home with Daniel VanRenselaar. The inspectors looked at all the rooms (except one bedroom), crawl space, attic, furnace, water heater, and garage and issued a report which was not admitted into evidence. Olson testified at trial that he believed that the water heater had been incorrectly installed because the controls were not properly connected, it lacked a temperature and pressure relief line, and the venting was improperly sized. Olson also noted that the kitchen addition looked about ten years old but did not recall any structural issues with the addition. Olson did not remember if he had inspected the attic.

Based on the report, the VanRenselaars contacted Matt Haggerty, a builder, to put together a plan to rebuild portions of the house. Haggerty put the VanRenselaars in touch with Mark Tersieff, an architect, who prepared a report for Haggerty. Tersieff testified at trial that he noticed

4

that the stairs lacked a required third stringer. He also discovered that the knee walls in the attic had been built with the wrong size of wood needed to hold the correct amount of insulation. Instead of being built with 2-by-6s as required, the knee walls had been built with 2-by-4s. He also found out that the rafters had the same issue, being built with 2-by-12s instead of the appropriate size. Tersieff further noted that the attic appeared to have been modified because the materials used were not available during the original construction. Tersieff believed that the attic was unsuitable for use as a living space. Tersieff noted that the modified attic would not pass an inspection. Tersieff also identified structural problems related to the kitchen addition and foundation. Tersieff believed an average home inspection would have noted the problems related to the garage and kitchen addition. That said, Tersieff also stated that a good home inspector may miss problems associated with the foundation. Haggerty estimated that the cost to repair the home, which included additional work beyond what was necessary to correct the home's defects, was $174,677.25.

### 2. Procedural Background

On June 29, 2020, the VanRenselaars filed a lawsuit against the Batreses alleging a violation of the Disclosure Act, breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. The case eventually proceeded to a jury trial, where the Batreses moved for directed verdict on each of the VanRenselaars' claims. The district court deferred ruling on the motion until the conclusion of evidence.

The jury returned a verdict for the VanRenselaars. The jury found that the Batreses violated the Disclosure Act, and that the claim was not barred by the statute of limitations. It also found that the Batreses had breached the contract with the VanRenselaars and the claim was not barred by estoppel. It next found that the Batreses committed fraud based on their answers on the property disclosure form and the claim was not barred by the statute of limitations. Specifically, the jury concluded that the Batreses committed fraud in their statements relating to structural problems with improvements to the home, structural problems with the foundation, and additions or alterations made without a permit. The jury ruled in favor of the Batreses on the good faith and fair dealing claim. It awarded the VanRenselaars $63,024 in damages on each claim upon which VanRenselaars prevailed. The jury was asked specifically the amount of damages attributable to fraud, and it answered $63,024.

After trial, the district court ruled on the Batreses' motion for directed verdict, granting it in part and denying it in part. It first ruled the Disclosure Act claim was barred by the statute of

5

limitations. The district court had previously ruled that the three-year statute of limitations applicable to statutory claims found in Idaho Code section 5-218(1) controlled, rather than the five-year statute of limitations period for written contracts. The district court determined that the statute of limitations began to run upon the willful or negligent violation or failure to perform any duty described by the Disclosure Act—not the *discovery* of a violation. Thus, it determined that the statute of limitations began to run on April 7, 2017. The VanRenselaars made an offer to purchase the home on April 3 and acknowledged receipt of the property disclosure form on April 4. The district court noted that the form was not amended and the VanRenselaars did not rescind the offer to purchase the home. Because the statute of limitations began to run on April 7, 2017, the district court found the Disclosure Act claim, filed on June 29, 2020, was barred by the three-year statute of limitations in Idaho Code section 5-218(1) and granted the Batreses' motion for directed verdict on this claim.

The district court rejected the Batreses' argument that the fraud claim lacked substantial evidence. It noted that the jury did not find fraud relating to the water heater and furnace, so it limited its discussion to the structural problems and permitless additions. It also pointed out that the Batreses indicated that there were no structural problems with the improvements on the disclosure form and the form was admitted into evidence. The VanRenselaars' expert, Mark Tersieff, testified that there were multiple problems with the attic conversion, it presented a safety concern, and would not pass inspection. Tersieff also testified that the kitchen addition was structurally unsound and was sitting on top of the foundation without being attached to the foundation. The district court further noted that there was substantial evidence to support a claim for fraud based on the statement that no substantial additions or modifications were made without a permit. It found substantial evidence to support the elements of a fraud claim and denied the Batreses' motion for directed verdict.

After the trial, the Batreses moved for judgment notwithstanding the verdict, or alternatively, relief from judgment and a new trial on the fraud claim. The Batreses argued that there was not substantial evidence to support a breach of contract claim. They further argued that the fraud claim was barred by the statute of limitations. In their view, the statements at issue were made April 4, 2017, when the property disclosure form was delivered. The VanRenselaars "discovered" the misrepresentation when they had the home inspected and received the report detailing the deficiencies in the house. Thus, the fraud claim, based on structural problems, was

6

barred by the three-year statute of limitations. Additionally, the Batreses argued that the VanRenselaars were on constructive notice that some of the additions had been done without a permit because "the lack of a permit in the public record." Therefore, the statute of limitations began to run prior to June 2017. In addition, the Batreses argued the VanRenselaars did not introduce substantial evidence to establish each element of the fraud claim. Finally, the Batreses sought a new trial based on evidentiary errors made during the trial and newly discovered evidence.

The district court denied this motion. It ruled that the fraud claim was not barred by the statute of limitations because the VanRenselaars did not discover the facts constituting fraud until, at the earliest, December 2017. The court also found that there was substantial evidence to establish each element of the fraud claim.

The VanRenselaars sought attorney fees under the PSA signed by the parties. The district court ruled that the VanRenselaars were not the prevailing party based on the matter as a whole and declined to award attorney fees. The district court noted that the VanRenselaars asserted damages in excess of $174,000 but the jury only awarded $63,024. The district court also considered its dismissal of the Disclosure Act claim after trial in making its prevailing party ruling.

The Batreses filed a notice of appeal, which was dismissed by this Court because the amended judgment did not dispose of all claims for relief. A second amended judgment was filed, and the Batreses appealed. The VanRenselaars filed a cross-appeal.

## II. ISSUES ON APPEAL

1.  Whether the district court erred when it denied the Batreses' motions for directed verdict and judgment notwithstanding the verdict as to the VanRenselaars' fraud claim.

2.  Whether the district court erred by including a breach of contract jury instruction and denying the Batreses' motion for judgment notwithstanding the verdict on the breach of contract claim.

3.  Whether the district court erred when it determined the VanRenselaars' Property Condition Disclosure Act claim was barred by the statute of limitations.

4.  Whether the jury verdict can stand after the Property Condition Disclosure Act claim was dismissed.

5.  Whether the district court abused its discretion when it denied the VanRenselaars' request for attorney fees after determining they were not the prevailing party at trial.

6.  Whether either party is entitled to attorney fees on appeal.

## III. STANDARDS OF REVIEW

When a party challenges the district court's rulings on both a motion for directed verdict and a motion for judgment notwithstanding the verdict, this Court "need make only one ruling because both are governed by the same standard." *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.*, 127 Idaho 41, 44, 896 P.2d 949, 952 (1995). We review the denial of those motions de novo, "without giving special deference to the decision of the trial court . . . ." *Streamline Builders, LLC v. Chase*, 174 Idaho 765, ___, 560 P.3d 508, 513 (2024) (quoting *Lands v. Sunset Manor, LP*, 173 Idaho 658, 670, 546 P.3d 670, 682 (2024)). In doing so, we do not "reweigh the evidence or consider the witnesses' credibility, rather, this Court must accept the truth of all evidence against the moving party and draw all legitimate inferences therefrom in favor of the non-moving party." *Id.* (quoting *Griff, Inc. v. Curry Bean Co.*, 138 Idaho 315, 319, 63 P.3d 441, 445 (2003)). "This test does not require the evidence be uncontradicted, but only that it be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper." *Genho v. Riverdale Hot Springs, LLC*, 174 Idaho 894, ___, 560 P.3d 1041, 1048 (2024) (quoting *Ackerschott v. Mountain View Hosp., LLC*, 166 Idaho 223, 230, 457 P.3d 875, 882 (2020)).

Awards of attorney fees and costs are reviewed under the abuse of discretion standard. *Yellowstone Log Homes, LLC v. City of Rigby*, 173 Idaho 288, 293, 540 P.3d 990, 995 (2023). A trial court does not abuse its discretion if it: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## IV. ANALYSIS

### A. The statute of limitations did not bar the VanRenselaars' fraud claim, and substantial evidence supports the jury's verdict.

The Batreses raise two arguments on appeal related to the fraud claim. First, they argue that the evidence produced at trial was insufficient to establish fraud on each of the three statements the jury found fraudulent. Second, they argue that the district court erred by concluding the fraud claim was not barred by the statute of limitations. Because the statute of limitations would bar the fraud claim if applicable, we will address it first, before turning to the Batreses' attack on the evidence.

#### 1. Statute of limitations

8

Fraud claims are subject to a three-year statute of limitations. I.C. § 5-218(4). Such claims do not accrue "until the discovery . . . of the facts constituting the fraud or mistake." *Id.* The Batreses argue the VanRenselaars had actual knowledge of the structural problems with the home when they received the inspection report and lived in the home before closing. They also argue that the VanRenselaars could have discovered, through reasonable diligence, that the city had no record of permits for modifications to the kitchen and attic. Therefore, the statute of limitations began to run when the Batreses delivered the property condition form or when the VanRenselaars reviewed the pre-sale inspection report, both of which occurred before closing. According to the Batreses, the fraud claim is thus barred. Legal issues related to statutes of limitation are reviewed de novo. *BrunoBuilt, Inc. v. Briggs Eng'g, Inc.*, 171 Idaho 729, 734, 525 P.3d 1122, 1127 (2023).

The discovery rule requires "more than an awareness that something may be wrong but requires knowledge of the facts constituting fraud." *McCoy v. Lyons*, 120 Idaho 765, 773, 820 P.2d 360, 368 (1991). Knowledge of fraud can be inferred "if the aggrieved party could have discovered the fraud by reasonable diligence . . . ." *Id.* That said, courts "should hesitate to infer knowledge of fraud." *Id.* "[T]he date of discovery is a fact question for the jury unless there is no evidence creating a question of fact." *DBSI/TRI V v. Bender*, 130 Idaho 796, 807, 948 P.2d 151, 162 (1997) (citation omitted).

In *Bender*, the parties were engaged in real estate transactions. 130 Idaho at 798–99, 948 P.2d at 153–154. Bender constructed the projects and WDSC, a corporation wholly owned by Bender, managed the projects. *Id.* DBSI was purchasing the real estate, but the contract required DBSI to retain WDSC as the management company for the projects. *Id.* Because the real estate projects were for low-income housing, the sale required approval from the Farmers Home Administration, which included an audit of Bender's and WDSC's finances. *Id.* The audit revealed that books and records were incorrect, funds had been commingled, fees were excessive, and the financial records were unsatisfactory. *Id.* at 807–08, 948 P.2d at 162–63. DBSI sought recovery on several bases, including fraud. As to the fraud claim, this Court inferred knowledge of fraud to the plaintiffs because the audit threw "sufficient suspicion" on the deal such that DBSI should have inquired further. *Id.* at 808, 948 P.2d at 163. Given the knowledge imputed to the plaintiffs, this Court affirmed dismissal of the fraud claim – holding that it was time barred. *Id.*

Another case in which this Court established the parameters of the discovery rule is *Nerco Mins. Co. v. Morrison Knudsen Corp.*, 140 Idaho 144, 90 P.3d 894 (2004). In 1986, Nerco wished

to develop a heap leach pad at one of their mines. *Id.* at 146, 90 P.3d at 896. They contracted with MK, an engineering firm, to do the pad design, conceptual planning, and feasibility studies that same year. *Id.* MK completed its work in early 1987. *Id.* Nerco then hired another company to implement MK's designs, relying on MK's feasibility studies. *Id.* The first module of the heap leach pad was completed by the new company in 1987, but Nerco noticed that the first module was beginning to fail in 1990 during the construction of the second module. *Id.*

Three years later, Nerco sued MK arguing that MK had fraudulently concealed and misrepresented statements in its geotechnical evaluation of the build site. *See id.* at 150, 90 P.3d at 900. MK argued that the statute of limitations barred the claim because Nerco had knowledge of sufficient facts to discover fraud more than three years before it filed the lawsuit. *Id.*

This Court held that Nerco's fraud claims were barred by the statute of limitations because more than three years before filing the action, Nerco's own engineers, plus two outside engineering firms, delivered reports suggesting that MK made false statements in their geotechnical evaluation. *Id.* at 151, 90 P.3d at 901. The reports delivered to Nerco constituted "sufficient circumstantial evidence from which Nerco knew or, with the exercise of reasonable diligence, should have been able to know, a cause of action for fraud might exist." *Id.* Since Nerco should have discovered fraud more than three years before they filed suit, their claims were barred. *Id.*

Residential real estate purchases are viewed under a different paradigm than those set forth above. Specifically, this Court has held that "[a]n inspection of the property, by itself, does not preclude buyers from bringing an action for fraud." *Lindberg v. Roseth*, 137 Idaho 222, 228, 46 P.3d 518, 524 (2002).

> If any latent defects that are not discoverable upon a reasonable inspection exist, the buyer who has made an inspection and did not discover such defects can still recover if the seller fraudulently failed to disclose or misrepresented the existence of such defects.

*Id.*

The VanRenselaars did not discover facts constituting fraud until after the sale closed. The home inspection did not reveal any problems with the attic conversion. The inspection simply noted that access to the attic was limited. Further, Tersieff testified that the attic would "be perceived to be structurally sound." However, the attic was modified to be a living space, and Tersieff testified it would not pass an inspection to be used for that purpose. As to the kitchen addition and its lack of connection to the foundation, the inspection report stated that the

10

foundation was "settled" but its performance condition was acceptable. Daniel VanRenselaar also testified that he did not learn of the many structural defects within the home until after the City of Nampa issued its report. Thus, unlike *Bender* and *Nerco*, the home inspection did not give the VanRenselaars circumstantial evidence to believe they had a cause of action for fraud.

The Batreses argue that the VanRenselaars had sufficient knowledge to inquire further because they knew of certain misrepresentations prior to closing. Specifically, they discovered that the water heater had been installed incorrectly, a board broke on the exterior deck, and the home had fewer than five legal bedrooms. While that may be true, those problems were not the basis of the fraud upon which the VanRenselaars sued and the jury reached its verdict. Moreover, the Batreses have not provided authority to support the proposition that when one becomes aware of *some* misrepresentations in a disclosure form, they are on notice for any other misrepresentations. In essence, the Batreses are arguing that the VanRenselaars should not have believed anything they said. Again, while this may be true, a reasonably diligent person would not have their home's foundation inspected after learning that a water heater was incorrectly installed. Accordingly, the VanRenselaars did not "discover" facts constituting fraud until after the City of Nampa inspected the house and determined that the attic was structurally unsound, and the kitchen addition was not properly attached to the foundation. Closing occurred on June 29, 2017. The inspection by the City of Nampa did not take place until the spring of 2018 and the Vanrenselaars' complaint was filed on June 29, 2020—well within the three-year statute of limitations to bring an action for fraud.

As to the Batreses' second argument regarding the lack of permits constituting notice, this Court has held that record-as-notice does not "*per se* establish constructive notice for purposes of the statute of limitations." *Davis v. Tuma*, 167 Idaho 267, 276, 469 P.3d 595, 604 (2020). However, the "contents of applicable recorded instruments may factor into what could have been discovered by the exercise of due diligence . . . ." *Id.* Here, the VanRenselaars had no reason to believe that any major additions had been done without permits. Daniel VanRenselaar testified that he did not begin to search for work permits until after he began getting frequent headaches in October or November 2017. Accordingly, the record includes sufficient facts for a jury to conclude that the VanRenselaars did not discover the facts regarding unpermitted work until after the sale closed.

In sum, the VanRenselaars did not discover facts constituting fraud until after the transaction closed—within three years of instituting this lawsuit. The district court did not err by ruling the statute of limitations did not bar the fraud claim.

*2. Sufficiency of Evidence*

The Batreses argue that even if the statute of limitations did not bar the fraud claim, the VanRenselaars failed to prove each element of fraud with sufficient evidence. A claim for fraud consists of nine elements, each of which must be proved by clear and convincing evidence: (1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 847, 419 P.3d 1139, 1145 (2018). "Clear and convincing evidence is evidence that indicates the thing to be proved is highly probable or reasonably certain." *Neustadt v. Colafranceschi*, 167 Idaho 214, 225, 469 P.3d 1, 12 (2020) (quotation marks and citation omitted). But to survive a motion for directed verdict, a party need only produce substantial evidence of the elements in dispute. *Inv. Recovery Fund, LLC v. Hopkins*, 167 Idaho 42, 49, 467 P.3d 406, 413 (2020). Therefore, this Court does not review whether the VanRenselaars proved fraud by clear and convincing evidence, but rather, whether they introduced substantial evidence upon which a jury could rule in their favor. "Evidence is substantial if a reasonable trier of fact would accept and rely upon it in determining whether a disputed point of fact has been proven." *Reding v. Reding*, 141 Idaho 369, 372-73, 109 P.3d 1111, 1114–15 (2005).

This Court has used two different terms when listing the fourth element of a fraud claim: the speaker's knowledge of the statement's falsity; or the speaker's knowledge of the statement's falsity or ignorance of its truth. *Compare SRM Arms, Inc. v. GSA Direct, LLC*, 169 Idaho 196, 207, 494 P.3d 744, 755 (2021) ("knowledge of its falsity"), *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 600, 150 P.3d 288, 293 (2006) ("knowledge of its falsity"), *and Neustadt*, 167 Idaho at 225, 469 P.3d at 12 ("knowledge of its falsity") *with Choice Feed, Inc. v. Montierth*, 168 Idaho 124, 138, 481 P.3d 78, 92 (2021) ("knowledge about its falsity or ignorance of its truth"), *Budget Truck Sales*, 163 Idaho at 847, 419 P.3d at 1145 ("knowledge about its falsity or ignorance of its truth"), and *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 266, 483 P.3d 313, 323 (2021) ("knowledge about its falsity or ignorance of its truth").

We take this opportunity to clarify that "knowledge of its falsity" is an incomplete statement of law. "A proper and complete statement" of the fourth element is: the speaker's knowledge of the statement's falsity or ignorance of its truth. *Frontier Dev. Grp., LLC v.*

*Caravella*, 157 Idaho 589, 594, 338 P.3d 1193, 1198 (2014) (quoting *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 239, 108 P.3d 380, 386 (2005)). Statements made recklessly, without knowledge of their truth or falsity are sufficient to support the fourth element of a fraud claim. *See Parker v. Herron*, 30 Idaho 327, 330–31, 164 P. 1013, 1014 (1917) ("In addition to the falsity of representations it must be shown that the party making them knew them to be false, or that he made them recklessly, without knowledge of their truth or falsity.").

The Batreses argue that "knowledge of its falsity" should control. They maintain that applying "ignorance of its truth" would incentivize sellers to check "do not know" in response to every question on the property condition disclosure form. Under the Batreses' proposed definition, however, a property owner who checks "no" to "is there any water damage in the home" because they have not encountered any water damage would not be liable because they lacked knowledge that "no" was false. So, the Batreses' proposed fourth element would incentivize sellers to answer "no" when they in fact do not know. In contrast, applying *knowledge of falsity or ignorance of its truth* (including reckless ignorance) encourages accuracy and transparency. Under the Batreses' proposed fourth element, a "no" may mean "I do not know if there is any water damage. I assume there is not because I have not seen any." Applying "knowledge of its falsity or ignorance of its truth" makes "no" mean "no" and "yes" mean "yes." Answering "do not know" when the seller does in fact know may be an actionable misrepresentation. By the same logic, answering "no" when the seller does not know may also constitute an actionable misrepresentation. *See Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 881 (Mo. 2015) (en banc) ("[B]y representing that the fact is true when the speaker does not know whether the fact actually is true, the speaker is misrepresenting his knowledge.").

The Batreses seek to support their "knowledge of its falsity" argument by relying on the standard found in the Disclosure Act. Idaho Code section 55-2507 requires the property condition disclosure form to contain a statement of purpose, including a statement substantially similar to "[t]he form constitutes a statement of the conditions of the property and of information concerning the property *actually known by the transferor*." I.C. § 55-2507(1) (emphasis added). The seller is also not liable if the "error, inaccuracy or omission was not *within the personal knowledge* of the transferor . . . ." I.C. § 55-2511(1) (emphasis added); *see also Bolognese v. Forte*, 153 Idaho 857, 862, 292 P.3d 248, 253 (2012) ("To prove misrepresentation, including by concealment, Buyers had to prove that *Sellers knew* that required permits had not been obtained . . . ." (emphasis added)).

13

The Disclosure Act applies to the VanRenselaars' statutory claim; it does not apply to the requirements to prove the fourth element of a fraud claim. The distinction between "knowledge of its falsity" and "knowledge of its falsity or ignorance of its truth" concerns the elements of a fraud claim. Therefore, the Batreses may commit fraud for statements made recklessly, without knowledge of their truth. But they may not violate the Disclosure Act unless the information misstated on the form was *actually known* by them. I.C. § 55-2507(1).

Finally, the Batreses limit their discussion to a few contested elements of fraud without conceding that the VanRenselaars proved the non-contested elements. An argument is waived if it is not supported with argument and authority. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). As such, the following analysis is limited to only those elements of fraud that the Batreses contest. Jury instruction 27 states in relevant part "[t]he Defendants either knew the statement was false or were unaware of whether the statement was true at the time the statement was made . . . ." Because the Batreses do not specifically argue this instruction was erroneous on appeal, we will apply the same standard. We discuss each of the fraudulent misrepresentations the jury found in turn.

### a. Have any substantial additions or alterations been made without a building permit?

The Batreses make a few arguments related to the statement "have any substantial additions or alterations been made without a building permit?" First, they argue that Gabriel Batres' testimony gave the jury the impression he did the work himself, in part because of a language barrier. For example, Daniel asked Gabriel who built the kitchen addition. Gabriel said "[N]obody, we built it." Second, the Batreses contest specific elements of the fraud claim: (2) the falsity of the statement, (4) the speaker's knowledge of its falsity or ignorance of its truth, and (5) the speaker's intent to induce reliance. For the following reasons, we conclude the VanRenselaars introduced substantial evidence for the jury to conclude the Batreses committed fraud by answering "no" to "have any substantial additions or alterations been made without a building permit."

### i. Falsity of the statement

The Batreses argue the VanRenselaars failed to prove falsity by clear and convincing evidence because Sullivan's testimony indicated the City of Nampa's records were incomplete. That misstates our standard of review. We do not look to whether the VanRenselaars proved fraud by clear and convincing evidence. Rather, we look to whether they introduced substantial evidence

14

to support a jury's finding in their favor. *Caravella*, 157 Idaho at 595, 338 P.3d at 1199. The Batreses also argue that evidence obtained after trial indicates they may have in fact obtained a permit for the kitchen addition and that Gabriel Batres did not help with the work.

The VanRenselaars produced substantial evidence upon which a jury could conclude that substantial additions to the home had been made without a permit. Daniel VanRenselaar requested a full history of work and building permits, and Sullivan's testimony indicated that at least some record of a permit would come up during a search, either an application or contact information. However, the only permits VanRenselaar received concerned the carport, air conditioner, and wood stove. No permits or evidence of permits for the kitchen and attic modifications were produced. This Court does not re-weigh the evidence and draws all inferences in favor of the non-moving party. *Streamline Builders, LLC*, 174 Idaho at ___, 560 P.3d at 513. There is substantial evidence from which a jury could conclude major additions had been made without permits.

### ii. Knowledge of its falsity/ignorance of its truth

The Batreses argue that they did not have actual knowledge that the required permits had not been obtained. They argue that they do not know how to build anything, so they hired contractors, and contractors are responsible for obtaining permits. Therefore, they maintain that there is not clear and convincing evidence to establish they knew those permits were not obtained.

Substantial evidence exists for the jury to conclude the Batreses were at least ignorant of whether work had been done without permits, and, therefore, should not have checked the box "no" on the disclosure form. Sullivan testified that a homeowner must request a permit if he is doing the work, otherwise the contractor requests it. Gabriel Batres requested permits for the wood stove and carport and listed himself as the builder. Further, Gabriel could not remember whether the attic conversion had been inspected. The Batreses did testify that they hired a contractor to do the kitchen addition. Both Maria and Gabriel Batres testified that they remember inspectors from the city coming to look. They also remembered the names of some of the contractors who performed the work.

But substantial evidence need not be uncontradicted. *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, 794, 435 P.3d 1106, 1114 (2019). According to Olson, when a permit is issued, the last step in the process is inspection. Thus, the fact that the attic modification was structurally unsound and should not have passed an inspection could support a factfinder's conclusion that it was done without a permit. In the same way, the fact that the kitchen addition

15

would not have passed inspection could support a factfinder's conclusion that it was done without a permit. Further, while Maria and Gabriel testified that they remembered contractors performing work on the attic and kitchen, they were unable to provide receipts for the contractors' services. Additionally, the jury heard that Maria's brother-in-law, a professional welder in Mexico, built the carport. Maria's other brother-in-law built a fence at the house. Finally, Daniel VanRenselaar testified that Gabriel Batres told him that he built the kitchen. A reasonable factfinder could rely on this evidence and conclude the Batreses were ignorant as to the truth of their assertion that no substantial additions had been done without permits.

### iii.  Intent to induce reliance

Finally, the Batreses argue that the property condition disclosure form cuts against any justifiable reliance by the VanRenselaars. The form includes a section that indicates the Seller lacks specialized knowledge and has no greater knowledge than what a careful inspection of the home would reveal. The Batreses also argue that their conduct during negotiations, granting the VanRenselaars extensions for obtaining a home inspection and allowing them to rent the home prior to closing, suggest they lacked intent to induce the VanRenselaars to rely on their statements. The VanRenselaars encourage the Court to reject this argument because if a buyer cannot rely on the form, there is no point to the form in the first place. We agree with the VanRenselaars.

We have stated that property condition disclosure forms supply the basis for reliance by a property's purchasers:

> RE–25 Seller's Property Condition Disclosure Forms . . . are documents drafted by the seller of a piece of property or his or her realtor containing basic information about the property. *These documents are provided to potential purchasers and are relied on by those purchasers in determining whether or not to make an offer.*

*Humphries v. Becker*, 159 Idaho 728, 732, 366 P.3d 1088, 1092 (2016) (emphasis added). In general, one who makes a misrepresentation "is subject to liability to the persons or class of persons whom he intends or *has reason to expect to act* or to refrain from action in reliance upon the misrepresentation . . . ." RESTATEMENT (SECOND) OF TORTS § 531 (AM. L. INST. 1977) (emphasis added).

The Batreses certainly had reason to expect the VanRenselaars would rely on the property condition disclosure form. The Disclosure Act provides that a buyer may rescind their purchase agreement based on the disclosure form without incurring any legal liability and the buyer is entitled to a return of any deposits made in connection with the sale. I.C. § 55-2515. If a buyer can

16

rescind a contract without consequence based on the disclosure form, then the buyer may properly rely on that form to decide whether to buy a home.

Therefore, substantial evidence exists for which a jury could find the Batreses committed fraud by answering "no" to "have any substantial additions or modifications been made without a building permit."

### b. *Are there any structural problems with the improvements?*

The Batreses argue that they did not have any knowledge of structural problems with improvements. They also challenge the fifth element: intent to induce reliance. For the reasons just discussed, the jury could conclude the Batreses intended for the VanRenselaars to rely on the property disclosure form. Therefore, the following discussion concerns only the fourth element of a fraud claim, "the speaker's knowledge about [the statement's] falsity or ignorance of its truth." *Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 847, 419 P.3d 1139, 1145 (2018).

Maria Batres testified that she did not notice any problems with the kitchen addition. She also testified that she did not notice any settling with the kitchen addition. She also slept in the attic during the winter and was not aware of any problems relating to the attic conversion. The Batreses also point out that Maria Batres was a certified family home provider, which means she provided care for individuals with developmental disabilities and elderly individuals. These clients lived in the Batreses' home, and the Idaho Department of Health and Welfare (IDHW) conducted annual inspections of their home. If the home satisfied IDHW's standards, they would issue a certificate. Maria received certificates each year from 2005 to 2012. Several of these certificates were issued while the attic was being converted to a living space.

Notwithstanding the conflicting evidence presented at trial, we conclude the VanRenselaars introduced substantial evidence that the Batreses knew there were structural problems with the improvements or were unaware of the truth of their representation on the property condition disclosure form, especially considering that substantial evidence indicates they lacked knowledge of whether work was done without permits. Gabriel Batres could not recall whether the attic conversion had been inspected. When asked why he marked "no" to "are there any structural problems with the improvements," Gabriel said, "I don't know why I marked no." He also disputed Tersieff's testimony and said that the kitchen and attic modifications were safe. In his opinion, the attic was safe because "it looked safe." Furthermore, Daniel VanRenselaar testified that Gabriel stated he built the kitchen addition. A reasonable fact finder could conclude

17

the Batreses lacked a sufficient factual basis to assert there were no structural problems with the unpermitted and uninspected major additions to the home. Therefore, the jury could reasonably conclude the Batreses were at least ignorant of the truth of their affirmative representation that there were no structural problems with the kitchen and attic modifications.

### c. Are there any structural problems with the foundation?

Again, the Batreses challenge the sufficiency of the evidence as to the fourth and fifth elements of a fraud claim. In their reply brief, they point out that the district court never discussed structural problems with the foundation. The district court evaluated whether there was substantial evidence to support the jury's verdict as it related to unpermitted improvements and problems with the improvements. It did not separately analyze structural problems with the foundation. This is inconsequential for two reasons. First, we review the denial of a motion for directed verdict de novo, so we can look to the evidence itself rather than relying on the district court's order. Second, and more importantly, the structural problems associated with the kitchen improvement were with its foundation.

Tersieff testified that the kitchen addition lacked rim joists, which keep the floor joists from rolling over like dominoes. He further testified that the piece of lumber that sits on top of the foundation was untreated, which makes the wood more susceptible to rot. He also testified that there were no visible anchor bolts attaching the kitchen addition to the foundation. Finally, Tersieff believed a "garden variety home inspector" would have caught the foundation issues related to the kitchen addition. In Tersieff's view, there were structural problems with the foundation of the kitchen addition. Finally, there was testimony that Gabriel told Daniel that he built the kitchen. This is substantial evidence from which a jury could conclude the Batreses were ignorant whether there were any structural problems with the foundation, but answered affirmatively that there were no structural problems with the foundation.

In sum, we affirm the district court's denial of the Batreses' motion for directed verdict and motion for judgment notwithstanding the verdict. The VanRenselaars introduced substantial evidence of the elements in dispute. Reasonable minds could conclude a verdict in favor of the VanRenselaars was proper.

**B.    The district court erred when it determined the VanRenselaars' Property Condition Disclosure Act claim was barred by the statute of limitations.**

18

On cross-appeal, the VanRenselaars argue the district court erred when it partially granted the Batreses' motion for directed verdict and dismissed the Disclosure Act claim based on the three-year statute of limitations in Idaho Code section 5-218(1). They raise two main arguments in support. First, they argue that the five-year statute of limitations applicable to written contracts, Idaho Code section 5-216, applies. VanRenselaars argue that a violation of the Disclosure Act gives rise to a breach of contract claim, despite the statutory duty of sellers to complete the disclosure form. *See Path to Health, LLP v. Long*, 161 Idaho 50, 58–59, 383 P.3d 1220, 1228–29 (2016). Thus, the five-year statute of limitations should apply to this claim. Second, they argue that even if the three-year statute of limitations applies, the claim cannot begin to accrue until the sale closes because they have not been damaged prior to closing. There are many reasons why a sale may fall through. Thus, unless the sale closes, the buyer suffers no damages due to a seller's failure to disclose.

At trial, the jury found that the Batreses violated the Disclosure Act. When the district court ruled on the Batreses' motion for directed verdict, it determined that the Disclosure Act claim was barred by the statute of limitations set forth in Idaho Code section 5-218(1). That section provides that "[a]n action upon a liability created by statute" must be brought within three years. I.C. § 5-218(1). "A 'statutory liability' is one that depends for its existence on the enactment of the statute . . . ." *Dietrich v. Copeland Lumber Co.*, 28 Idaho 312, 154 P. 626, 628 (1916). The district court noted that to prove a violation of the Disclosure Act, a buyer must show that the seller failed to perform a duty. I.C. § 55-2517. The plain language of section 55-2517 imposes liability when the seller fails to perform a duty, not when the buyer discovers a failure. A seller who willfully or negligently violates or fails to perform any duty required by the Disclosure Act "shall be liable in the amount of *actual damages suffered by the transferee*." I.C. § 55-2517 (emphasis added).

The district court then laid out the sequence of events giving rise to this dispute. On April 3, 2017, the VanRenselaars made an offer to purchase which the Batreses accepted. On April 4, the VanRenselaars acknowledged receipt of the property condition disclosure form. The Batreses did not make any amendments to the form prior to closing. After a buyer receives a property condition disclosure form, they may rescind the PSA within three business days. Because the VanRenselaars did not object or rescind the PSA, the district court concluded that any claim accrued on April 7, 2017. The complaint was filed June 29, 2020, more than three years after the delivery of the disclosure form, so the claim was barred.

We must first determine the appropriate statute of limitations. The VanRenselaars argue the applicable statute of limitations is not found in section 5-218(1), but rather in section 5-216 which applies to written contracts. The limitation period for a claim on a written contract is five years. I.C. § 5-216. For support, they point to this Court's decision in *Path to Health, LLP v. Long*, 161 Idaho 50, 383 P.3d 1220 (2016). That case concerned, in part, whether the plaintiff's claim for violating statutory duties sounded in tort or contract. *Id.* at 58, 383 P.3d at 1228. In answering that question, the Court relied on a previous decision regarding which statute of limitations applied. *Id.* We noted "if a cause of action for breach of a duty based on a contractual promise *could also be maintained without the contract by virtue of a statutory or common law duty*, then the action is founded upon tort, not contract." *Id.* (emphasis added) (quoting *Sumpter v. Holland Realty, Inc.*, 140 Idaho 349, 354, 93 P.3d 680, 685 (2004)). "[A] 'statutory liability' is liability 'that depends for its existence on the enactment of the statute, and not on the contract of the parties.'" *Dep't of Health & Welfare v. Beason*, 173 Idaho 672, 679, 546 P.3d 684, 691 (2024) (quoting *State v. Ada Cnty. Dairymen's Ass'n*, 66 Idaho 317, 322, 159 P.2d 219, 220 (1945)).

The statute in *Path to Health* imposed duties after the parties "enter[ed] into a written contract." 161 Idaho at 57, 383 P.3d at 1227 (citing I.C. § 54-2087). By contrast, the Disclosure Act imposes disclosure requirements on "any person who intends to transfer any residential real property." I.C. § 55-2504. And the disclosure requirements do not require a written contract. Instead, a seller must deliver a completed property condition disclosure form within ten days of accepting the buyer's offer. I.C. § 55-2509. The Disclosure Act provides that sellers who willfully or negligently fail to comply with the act are liable to the seller in the amount of actual damages. I.C. § 55-2517. Thus, liability under the Disclosure Act depends on violating statutorily defined duties—not the contract between the parties. We hold the applicable statute of limitations for a violation of the Disclosure Act is the three-year limitation set forth in Idaho Code section 5-218(1), which applies to "[a]n action upon a liability created by statute . . . ."

Having concluded the three-year limitation period in section 5-218(1) controls, as the district court determined, we must next decide when the cause of action accrued. "Civil actions can only be commenced within the periods prescribed in this chapter after the cause of action *shall have accrued* . . . ." I.C. § 5-201 (emphasis added). The district court erred by determining the VanRenselaars' claim accrued, at the latest, on April 7, 2017.

20

"'[A]ccrue' ha[s] a well-settled meaning." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 810 (2024). A "right accrues when it comes into existence." *United States v. Lindsay*, 346 U.S. 568, 569 (1954). Put differently, a right accrues "when the plaintiff has a complete and present cause of action." *Gabelli v. SEC*, 568 U.S. 442, 448 (2013); *see also Yu v. Idaho State Univ.*, 165 Idaho 313, 317, 444 P.3d 885, 889 (2019). A cause of action is complete and present when the plaintiff can file suit in court and obtain relief. *Corner Post*, 603 U.S. at 810.

Causes of action accrue "'on [the] date that damage is sustained and not [the] date when causes are set in motion which ultimately produce injury.'" *Id.* (quoting BLACK'S LAW DICTIONARY 37 (4th ed. 1951)). If an act requires certain consequences before legal injury occurs, "'it is not the mere doing of the act that gives rise to a cause of action, but the subsequent occurrence of damage or loss as the consequence of the act, and *in such case no cause of action accrues until the loss or damage occurs*.'" *Id.* at 810–11 (quoting BALLENTINE'S LAW DICTIONARY 15–16 (2d ed. 1948) (emphasis added)). This is not to be confused with the previously discussed "discovery rule." Generally, a cause of action accrues when the plaintiff suffers damage. *See id.* In certain instances, such as fraud or professional malpractice, the legislature provides discovery exceptions such that the claim is deemed to accrue on the date of discovery instead of the date of damage. *See McCormack v. Caldwell*, 152 Idaho 15, 20, 266 P.3d 490, 495 (Ct. App. 2011).

We hold that a claim does not accrue for purposes of the Disclosure Act until the sale actually closes, because only then is the buyer damaged. When the Batreses allegedly failed to disclose information on April 3, 2017, the VanRenselaars' damages were speculative. Their financing could have fallen through, either party could have backed out of the deal, or the failure of a contingency may have prevented the sale. The failure to disclose set in motion the VanRenselaars' damages, but did not cause damages until they purchased the home. This holding is consistent with the seller's ongoing duty to amend the disclosure statement if the seller learns information has changed. I.C. § 55-2513 ("Transferor *shall* amend the disclosure statement prior to closing if transferor discovers any of the [] information on the original statement has changed."). The seller's duties to accurately disclose and amend under the Disclosure Act extend until the sale closes. If the water heater fails two days before the sale closes, the "Transferor shall amend the disclosure statement" if he previously indicated the water heater was working. The VanRenselaars' Disclosure Act claim accrued on June 29, 2017, the day of closing, and was therefore not barred by the statute of limitations.

21

**C.** **We decline to address issues relating to the breach of contract claim because the claim is moot.**

The Batreses argue that the district court erred when it included a breach of contract instruction and that the court should have granted their motion for judgment notwithstanding the verdict on the contract claim. The crux of their argument is that the PSA required the Batreses to provide a property condition disclosure form. Apart from the Disclosure Act violation, the Batreses maintain, the VanRenselaars cannot point to a section of the PSA that the Batreses breached. The VanRenselaars argue that sellers of real property have no duty to complete a property condition disclosure form unless there is a contract triggering the duty to disclose. Citing *Path to Health v. Long*, 161 Idaho 50, 383 P.3d 1220 (2016), they argue that the Disclosure Act is "extant law" written into the PSA such that a violation of the Disclosure Act is a breach of the PSA. We decline to address these issues because they are moot.

"A case is considered moot when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Mitchell v. Ramlow*, 174 Idaho 723, ___, 559 P.3d 1210, 1213 (2024) (quoting *Frantz v. Osborn*, 167 Idaho 176, 180, 468 P.3d 306, 310 (2020)). An issue "is also considered moot when a judicial determination 'would have no effect either directly or collaterally on the plaintiff, the plaintiff would be unable to obtain further relief based on the judgment and no other relief is sought in the action.'" *Id.* (quoting *Idaho Schools for Equal Educ. Opportunity ex rel. Eikum v. Idaho State Bd. of Educ. ex rel. Mossman*, 128 Idaho 276, 282, 912 P.2d 644, 650 (1996)).

The jury found the Batreses liable in three ways: The Disclosure Act violation, breach of contract, and fraud. The jury was also instructed on the verdict form that "[t]his case involves multiple claims against the Defendants. Plaintiffs are not entitled to recover for the same damages more than once even if you find that the Defendants are liable to Plaintiffs for more than one claim." The jury completed the verdict form as follows:

> **QUESTION NO. 8:** For Question Nos. 1 [violation of the Idaho Property Condition Disclosure Act], 3 [breach of contract claim] . . . or 6 [the fraud claims] that you answered "Yes," [as to liability] if any . . . what is the total amount of damages sustained by Daniel and Theresa VanRenselaar?
>
> **ANSWER**: $63, 024.00

22

**QUESTION NO. 9:** Of the total amount of damages, if any, given in Question No. 8, what amount of the damages are the result of fraud?

**ANSWER:** $63,024.00

The jury answered yes to questions 1, 3 and 6. Given these answers, the jury, in effect, specified that it awarded damages for all three of the VanRenselaars' claims, but that the damages were the same for each violation. The jury's answers show that it followed the district court's instruction, which directed, "Plaintiffs are not entitled to recover for the same damages more than once even if you find that the Defendants are liable to Plaintiffs for more than one claim.

The jury verdict asked the jury to detail the amount of damages attributable to fraud, which it did, as noted above in Question No. 9, in the sum of $63,024.00 – the exact same amount it awarded for breach of contract and for the Disclosure Act violation. We have upheld the jury's award of damages under the fraud claim presented by the VanRenselaars. Issuing a ruling on the contract claim, whether we were to vacate the award or uphold it would make no difference. Any decision by us on the contract claim "would have no effect either directly or collaterally on the [VanRenselaars or the Batreses]" *id*., because the jury has awarded no additional damages attributable to that claim and the VanRenselaars sought no further relief from the trial court regarding this claim after the trial. Thus, the issues presented as to the contract claim are moot; whether we decide them in favor of the appellants or the respondents makes no difference. Any consideration of these issues at this juncture would be futile. Therefore, we decline to address the substantive arguments as to this claim.

**D.    The jury's verdict will stand because the jury allocated all damages to the fraud claim. Equal damages awarded on the Disclosure Act claim are inconsequential.**

The Batreses argue, citing cases from outside this jurisdiction, that the jury award cannot stand because it is impossible to determine whether the award was based, in part, on the Disclosure Act violation which the district court dismissed after the trial. They claim that "an appellate court cannot presume the verdict was based solely on the" counts that survived post-trial motions. Even so, we have now reinstated the jury's conclusion that the Batreses breached the Disclosure Act.

As noted above, the jury found the Batreses liable and awarded damages for breach of contract, breach of the Disclosure Act and fraud in the total amount of $63,024. That said, the jury concluded that all of the VanRenselaars' damages were attributed to fraud. Again, the jury was specifically instructed that the VanRenselaars could not obtain a double or triple recovery.

23

The Batreses argue that perhaps some of the fraud damages were attributable to the Disclosure Act claim and that "there is no way of knowing how much of the $63,024 under the answer to question number 8 might have been allocated to the VanRenselaars' violation of the Act claim." This argument is misplaced. The jury awarded the VanRenselaars damages for each claim, including the Disclosure Act claim. The amount of that award is identical to the amount awarded for fraud. That does not mean that there were no damages awarded for the Disclosure Act claim; instead, the amount awarded was for identical damages due to the Disclosure Act violation and the fraud. Given the jury's answers to the explicit questions in the verdict form, there is no concern about a potential error in the jury's damage calculations here. The jury unequivocally specified that the VanRenselaars incurred the same amount of damages for each claim. Thus, there is no need to speculate about any such damages also being allocated to the violation of the Disclosure Act claim. Therefore, we will not second-guess the jury's allocation of damages.

**E.     The district court abused its discretion when it denied the VanRenselaars' request for attorney fees after determining they were not the prevailing party.**

On cross-appeal, the VanRenselaars argue the district court erred when it denied their request for attorney fees, finding that they were not the prevailing party. They argue the district court did not act consistently with the applicable legal principles and did not reach its decision by an exercise of reason. The VanRenselaars contend they prevailed at trial, despite the jury ruling against them on the good faith and fair dealing claim and the district court's dismissal of the Disclosure Act claim, because they "walked into court with zero dollars and walked out with . . . $63,024." They also claim the district court failed to consider the Batreses' offer of judgment in determining which party prevailed.

"This Court will only reverse the district court's determination of which party prevailed in the 'rarest of circumstances.'" *City of Middleton v. Coleman Homes, LLC*, 163 Idaho 716, 723, 418 P.3d 1225, 1232 (2018) (quoting *Oakes v. Boise Heart Clinic Physicians, PLLC*, 152 Idaho 540, 543, 272 P.3d 512, 515 (2012)). Rule 54 of the Idaho Rules of Civil Procedure guides the prevailing party analysis. *Id.* The prevailing party analysis focuses on three main factors: "(1) the final judgment or result obtained in relation to the relief sought; (2) whether there were multiple claims or issues between the parties; and (3) the extent to which each of the parties prevailed on each of the claims or issues." *Id.* (quotation marks and citation omitted). It is examined based on the action as a whole and not claim-by-claim. *Id.*

24

However, "to the extent a contract affords a party the right to recover its attorney fees when it has prevailed on a specific claim, the overall prevailing party standard of Rule 54 does not apply." *Sunnyside Park Utilities, Inc. v. Sorrells*, ___ Idaho ___, ___, 568 P.3d 820, 829 (2025) (quoting *Miller Tr. of Glen Miller & Cynthia Anderson Revocable Living Tr. v. Rocking Ranch No. 3 Prop. Owners' Ass'n, Inc.*, 173 Idaho 359, 541 P.3d 1279, 1293 (2024)). Instead, "the determination of whether the party is entitled to recover its fees under the contract is a claim-by-claim determination that examines whether the party seeking fees recovered on each claim covered by the contractual attorney fee provision." *Id.* "[T]he terms of that contractual provision establish a right to an award of attorney fees and costs." *Tricore Invs., LLC v. Est. of Warren through Warren*, 168 Idaho 596, 627, 485 P.3d 92, 123 (2021).

Following the jury trial, the VanRenselaars requested attorney fees pursuant to the PSA. The PSA provides:

> ATTORNEY'S FEES: If either party initiates or defends any arbitration or legal action or proceedings which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorney's fees, including such costs and fees on appeal.

We have recently issued a decision upholding an award of attorney fees under a contractual provision with precisely this same language. *See McOmber v. Thompson*, ___ Idaho ___, ___, 572 P.3d 736, 752-53 (2025). Attorney fees under such a "broad" provision, that are "in any way connected with the" PSA, are awardable for each claim on which a party prevailed. *Id.* (the prevailing party's failure to apportion attorney fees between contract and tort defense was not fatal to their right to recover such fees). Thus, given the contractual obligation between the parties, the VanRenselaars, as the prevailing party as to the claims on which they prevailed, are entitled to an award of attorney fees for the trial of this case in the district court.

## F.     The VanRenselaars are awarded attorney fees on appeal.

The Batreses argue they are entitled to attorney fees on appeal based on the PSA and Idaho Code section 12-121. However, the Batreses have failed to prevail here and as such are not entitled to an award of attorney fees. Instead, we conclude that the VanRenselaars are the prevailing party.

The VanRenselaars' request for attorney fees on appeal is also predicated on the PSA. As we have held above, the attorney fee provision in the PSA provides that the prevailing party in legal proceedings that are in "any way connected" with it shall be awarded attorney fees, including on appeal. *See id*. We have determined that the Disclosure Act claim was improperly dismissed,

and attorney fees were analyzed under an improper standard. Additionally, the Batreses have prevailed on only one issue they raised on appeal (the applicability of the 3-year statute of limitations to the Disclosure Act claim). Therefore, the VanRenselaars are awarded attorney fees "in any way connected with" this appeal, in addition to costs pursuant to Idaho Appellate Rule 40.

## V. CONCLUSION

To summarize, we affirm the district court's denial of the Batreses' motions for directed verdict and judgment notwithstanding the verdict because substantial evidence exists from which a jury could find the Batreses committed fraud with respect to three statements made on the property condition disclosure form. We likewise affirm the district court because the statute of limitations did not bar the fraud claim; the VanRenselaars did not discover facts constituting fraud until well after the sale closed. However, on the cross-appeal, we reverse the district court's dismissal of the Disclosure Act claim because the claim did not accrue until the sale closed. Finally, we conclude that the district court abused its discretion when it denied the VanRenselaars' request for attorney fees because attorney fees must be evaluated under the broad contractual standard set forth in the PSA. The case is remanded to the district court for a determination of the amount of attorney fees to be awarded in connection with the trial. The VanRenselaars are awarded attorney fees and costs on appeal.

Justices BRODY, MOELLER, ZAHN, and MEYER concur.